[No. 755-2.    Division Two.    April 9, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK JAMES
WICKER, *Appellant.*

*Edmund E. Lozier,* for appellant.

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D.
Mladinov, Special Counsel,* for respondent.

PEARSON, C.J.—Defendant Frank James Wicker appeals
from a judgment and sentence for the crime of grand lar-
ceny, after conviction by a Pierce County jury. His only
assignment of error is the denial by the trial court of his
motion for a new trial based upon newly discovered evi-
dence. We find no error.

On or about September 10, 1971, a boat was removed
from Pacific Yacht Basin in Tacoma, where it had been
placed by the owner, Pacific Basin, Ltd., for purposes of
demonstration and sale. The boat was distinctive—a "Side-
winder," purple in color, equipped with a jet engine.

Certain witnesses testified that on the evening of Sep-
tember 10, 1971, they observed the defendant on the
grounds of Northwestern Petroleum Company in Tacoma,
which were located adjacent to one of the waterways of

the Port of Tacoma. They also observed a purple boat on the Northwestern Petroleum grounds, although none observed the boat in the water or being removed from the water.

One of these witnesses, Donald Hooper, a petroleum transport truck driver, testified that the defendant told him that he "had to pull a boat," that he requested the use of Hooper's boat trailer, and that he (Hooper) later saw the boat on the Northwestern Petroleum grounds. Hooper further testified that he saw the defendant's small car on the premises, and that later in the evening the boat was gone.

James Maples, the plant superintendent of Northwestern Petroleum, testified that he saw the boat first on the Northwestern Petroleum grounds and later on a trailer. Maples testified further that he observed the boat and trailer attached to defendant's car, and that some time later all vehicles were gone. (No witness actually saw defendant leave with the boat.)

These witnesses positively identified the defendant, with whom they had previously been acquainted as a petroleum hauler. They identified from photographs the boat observed on the Northwestern Petroleum grounds as the one stolen from Pacific Basin, Ltd.

Wanda Hooper, the wife of Donald Hooper, testified that the defendant phoned her on the night in question and requested the use of her boat trailer. She was unable to get it out of her garage, and so refused his request.

Defendant, a long-distance trucker, was residing temporarily in Phoenix, Arizona, when he learned in early November 1971, that a warrant for his arrest had been issued in connection with the theft of the boat. He returned to Washington for arraignment and trial.

Shortly before the April 1972, trial in this matter, the stolen boat and trailer were recovered in Phoenix. It does not appear from the record in whose possession they were found by Phoenix police. The serial number of the stolen trailer was found to have been partially obliterated, with

the serial number of a trailer owned by the defendant painted on the tongue.

The defendant's version of the facts was that an out-of-town friend, Buck Lancaster, requested his assistance in moving the boat; that when he was unable to procure a trailer, Lancaster left and returned with one; that he did not hook up to the trailer, but merely backed up to it and checked out its lights; and that Lancaster moved the trailer. Defendant testified that his car was not suitable nor equipped for moving the boat and trailer load.

The defendant further testified that his trailer, the serial number of which appeared on the stolen trailer, had been sold to one Jim Sears of Phoenix in the month following the incident with the boat. His theory of the case was, in essence, that he was an innocent and unwitting party to a larcenous scheme perpetrated by Lancaster and Sears. Defendant's own testimony constituted the entire case in his behalf.

Some months after notice of appeal was filed in this case, the defendant moved in this court for a remand to superior court for a hearing on a motion for new trial based upon newly discovered evidence. We remanded the case for that limited purpose. *See Palmer v. Cozza,* 2 Wn. App. 900, 471 P.2d 102 (1970).

Defendant based his motion for a new trial solely upon the affidavit of one John Askew of Phoenix, who stated that Jim Sears had admitted the theft of the boat and trailer and had said that "an innocent party was to be charged with the theft." The full affidavit is set forth in the margin.[1]

---

[1]The affidavit stated:

"To whom it may concern:

"I, John R. Askew of 1319 West Morelane Street, Phoenix, Arizona, make this deposition in order that it may help in some way to bring a guilty party to the eyes of the law. His name being Jim Sears. And that a man named Frank J. Wicker can be exonerated of a crime of which he has been tried and found guilty. I would have come forward sooner had I known Mr. Wicker was being sentenced for a crime he didn't commit.

■ It is well settled that to warrant the granting of a new trial on the ground of newly discovered evidence it must appear:

(1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching.

*State v. Adams,* 181 Wash. 222, 229, 43 P.2d 1 (1935); *State v. Peele,* 67 Wn.2d 724, 409 P.2d 663 (1966).

In our opinion, the trial court did not abuse its discretion

---

"Some time ago in Nogales, Mexico, Jim Sears made statements to the fact he had a boat of high value parked in his back yard that he had obtained in the city of Tacoma, Washington. He also stated an innocent party was to be charged with the theft of this property. I now understand this has taken place. About one week after he made these statements, he took me to his home and did indeed have a boat in his yard on a trailer with Washington license plates. The boat was purple in color, about 18' long and had a Ford inboard motor. He then offered to sell me this boat for the sum of $3500. I rejected his offer to buy the boat saying I wanted nothing to do with something that would or could send an innocent man to prison. He laughed at me and said that if I knew what was good for me I would forget that I had ever seen or heard of the boat. His knowing I leave town a lot because of my work and that my wife and child would still be here, said some type of accident could easily be arranged. Keeping this in mind, I kept silent. I no longer can do this knowing an innocent man is going to prison for something another has done. It would take very little investigation to bring this out in the open and to rectify a terrible mistake and injustice done to Mr. Wicker.

"I have in my possession a list of names of people, who, if they haven't seen the boat, at least they were told about it. I'm sure if any one of them knew that an innocent man was being sent to prison, they would come forward and try to help. I honestly do not think they are aware of what has taken place. The names I shall now give you are people all residing in Phoenix, Arizona.

"John Punsack, Ed Norton, Paul Carter—Walters Transport Carl Bloomquist

Walters Transport
1350 No. 24 Ave.
Phoenix Ariz

Dan Nelson          /s/

John R. Askew          /s/

Witness

John R. Askew
Robert V. Garcia          /s/

Notary"

in denying the motion. We conclude that the proferred evidence is of such an untrustworthy character in the context of this case that it could not be said to be such as *will probably* change the result. Indeed, it is questionable that the testimony of Askew would be admissible in the first instance.

The testimony reflected in the affidavit is clearly hearsay. The only basis for urging its admissibility is that it constitutes a declaration against penal interest, and is arguably excepted from the hearsay rule. In this state, the question of the admissiblity of declarations against penal interest is an open one (*see State v. Garrison,* 71 Wn.2d 312, 427 P.2d 1012 (1967); *State v. Grant,* 9 Wn. App. 260, 511 P.2d 1013 (1973)). However, it has been observed that the hearsay confession of an "accomplice," purporting to exonerate a defendant, is of an unreliable nature, particularly where it is uncorroborated and not inherently inconsistent with the guilt of the accused. *See, e.g., Brady v. State,* 226 Md. 422, 174 A.2d 167 (1961); C. McCormick, *Law of Evidence* § 278 (2d ed. 1972). This difficulty has been recognized by the draftsmen of the Proposed Federal Rules of Evidence (Comm. Print, H.R. 5463, June 28, 1973). Proposed Rule 804(b)(3) provides in part:

> A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

*See also* Advisory Committee's Note, Rule 804.

In this case, no significant circumstances corroborative of the assertions in the affidavit, nor other indicia of trustworthiness appear. The declarant, Sears, purportedly lives in Phoenix, and the stolen boat was recovered there. However, the defendant traveled to Phoenix regularly and resided there in the period following the incident. Thus this circumstance is not corroborative to a significant degree (it not appearing from the record in whose possession the boat was found).

However, while it would appear axiomatic that evidence

offered in support of a motion for new trial must reflect an admissible character, we need not here specifically decide the question of the admissibility of declarations against penal interest, nor the conditions which might properly delineate or modify such an exception to the hearsay rule. In our opinion, it was within the discretion of the trial court to conclude, aside from the question of admissibility, that the essentially uncorroborated hearsay declaration was of insufficient cogency or trustworthiness to support a conclusion that it *would probably* change the result of the trial.

The Supreme Court has had occasion to rule upon the propriety of granting the motion in contexts similar to this case. In *State v. Palmer,* 73 Wn.2d 462, 474, 438 P.2d 876 (1968), the defendant produced after trial an affidavit of a convicted accomplice admitting commission of the crime and exonerating the defendant. In holding that the trial court properly denied the motion for a new trial, the court said (quoting from *State v. Peele,* 67 Wn.2d 724, 732, 409 P.2d 663 (1966)):

> Where, as in the instant case, the state has produced strong and convincing evidence of guilt and the defendant little or no evidence of innocence, a new trial should not be granted on the unsupported, uncorroborated testimony of an accomplice or codefendant, nor upon the offer of any new evidence unless it appears that the newly discovered evidence is of such significance and cogency that it will probably change the result of the trial.

In *State v. Peele, supra,* it was held that the trial court abused its discretion in granting a new trial upon the basis of a convicted accomplice's affidavit admitting guilt and exculpating the defendant, where no corroborating evidence except that found in the record of the trial was adduced.

We believe this reasoning is equally applicable to the hearsay confession of a third party in this case which infer-

entially purports to exculpate Mr. Wicker. The state in this case presented convincing circumstantial evidence of guilt. Even assuming the admissibility of the hearsay declaration, in the absence of some new corroborative facts which would imbue the evidence with "such significance and cogency that it will probably change the result . . ." denial of the motion was a proper exercise of the trial court's discretion.

Judgment affirmed.

ARMSTRONG and PETRIE, JJ., concur.