[No. 3095-1.    Division One.    April 14, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. ROSA MARIE GARDNER, *Appellant*.

*Robert W. Ferguson*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *Jay A. Reich, Deputy*, for respondent.

ANDERSEN, J.—

FACTS OF CASE

It is uncontroverted that the defendant slashed a man with a 10-inch shard of glass causing him the loss of an eye. The issues of whether the stabbing was done in self-defense or in the defense of another were resolved against the

defendant by the jury. It is from a judgment and sentence for assault in the second-degree and while armed with a deadly weapon that defendant brings this appeal.

The record of the case before us provides a glimpse of the jungle in which some women live and earn their livelihood. The defendant who was 24 years old at the time of her trial, had a long record of prior convictions for prostitution in many cities and under many names. In the early morning hours of December 21, 1973, she was operating along the sidewalks of the Pike Street area of Seattle with another young woman as her partner.

According to the trial testimony of the man in the case, he was a good samaritan who sought to befriend two young ladies by giving them a ride. His kindness, as he testified, was repaid by the women stealing his wallet and car keys, causing him to give chase on foot down the street.

The defendant's testimony on the other hand was that the chase occurred following an act of prostitution in the man's parked car. She testified that a dispute arose as to price and the man started a fight. She told the jury that in her line of work, it is standard practice to try to get the man's car keys and throw them away as soon as any dispute starts and that was done here.

In either event, the chase terminated in an altercation between the man and the two women in the vestibule of a nearby apartment house. A door was broken in, and the defendant stabbed the man in the eye with glass from the broken door. Eyewitnesses who were by that time present, and whom the jury were entitled to believe, testified that the man was backed into a corner trying to defend himself against the two women when the defendant stabbed him with the broken glass. One of the eyewitnesses also testified that the defendant had to be restrained from stabbing the man a second time.

The defendant testified she had cut the man in defense of herself and her partner.

It was established at the trial that the defendant's partner in prostitution at the time of the stabbing had been

killed shortly before the trial. The trial court's refusal to permit the introduction into evidence of the decedent's written statement given to the police following the altercation is here assigned as error.

ISSUES

ISSUE ONE. Does the declaration against penal interest exception to the hearsay rule apply in the state of Washington under any circumstances?

ISSUE TWO. Was the signed statement of the defendant's partner in prostitution, who died before the trial, admissible into evidence at the trial?

DECISION

ISSUE ONE.

CONCLUSION. Declarations against penal interest may be admitted into evidence as exceptions to the hearsay rule in those situations where the constitutional and evidentiary criteria are fully met.

■ The so-called declaration against penal interest exception to the hearsay rule, briefly stated, is that statements by third persons are admissible as exceptions to the hearsay rule as statements against penal interest and, therefore, worthy of belief. The theory behind the exception is that a person is unlikely to speak falsely to his or her own hurt and that the element of self-interest affords a reasonably safe substitute for the oath and cross-examination as a guaranty of the truth. *State v. Garrison*, 71 Wn.2d 312, 313, 427 P.2d 1012 (1967).

In a relatively few jurisdictions, courts have adopted the declaration against penal interest exception as a rule of evidence, and in a few other jurisdictions, it has been adopted by statute or promulgated as a court rule. C. McCormick, *Evidence* § 278 (2d ed. Cleary 1972). This state has not as yet adopted it by any of these means. However, our courts have several times had occasion to consider it. *State v. Garrison, supra; State v. Howard*, 12 Wn. App. 158, 159, 529 P.2d 21 (1974); *State v. Wicker*, 10 Wn. App. 905, 909, 520 P.2d 1404 (1974); *State v. Grant*, 9 Wn. App. 260, 267, 511 P.2d 1013 (1973).

. The defendant in the present case argues that we are now obliged to adopt the penal interest exception to the hearsay rule as a matter of constitutional due process. She cites *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973) as authority.

*Chambers* arose out of the conviction of one Leon Chambers of the crime of murder. He was convicted of having murdered a policeman during a riot in Woodville, Mississippi by shooting him four times in the back with a .22 caliber revolver. He maintained his innocence at all times.

The appellant Chambers was convicted in a trial which he claimed was lacking in due process on two grounds: first, that he was not allowed to cross-examine one McDonald, who had confessed the crime (and whom Chambers called as a witness when the State did not do so) since under Mississippi law a party may not impeach his own witness; and second, that he was not permitted to introduce the testimony of the persons to whom McDonald had confessed the crime on the basis that such testimony was hearsay. The Supreme Court there held:

> We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that *under the facts and circumstances of this case* the rulings of the trial court deprived Chambers of a fair trial.
>
> The judgment is reversed and the case is remanded to the Supreme Court of Mississippi for further proceedings not inconsistent with this opinion.

(Italics ours.) *Chambers v. Mississippi, supra* at 302-03.

The Supreme Court by its detailed review of the evidence indicated that it probably felt that the evidence pointed to the guilt as being McDonald's rather than Cham-

bers'. *Chambers* expressly does not generally constitutionalize a common-law rule of evidence.

██ We hold that what *Chambers* does is to constitutionally mandate use of the declaration against penal interest exception to the hearsay rule when the evidence offered under that exception equates with the objective special circumstances found in *Chambers*, and the admission of such evidence is necessary to prevent manifest injustice.

Since the proposed evidence must equate with the objective special circumstances found in *Chambers* before a constitutional mandate to admit such evidence can arise, recourse is had to what the United States Supreme Court declared those circumstances to be in that case:

> The hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability. First, each of McDonald's confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Second, each one was corroborated by some other evidence in the case—McDonald's sworn confession, the testimony of an eye-witness to the shooting, the testimony that McDonald was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22-caliber revolver and subsequent purchase of a new weapon. The sheer number of independent confessions provided additional corroboration for each. Third, whatever may be the parameters of the penal-interest rationale, each confession here was in a very real sense self-incriminatory and unquestionably against interest. . . . McDonald stood to benefit nothing by disclosing his role in the shooting to any of his three friends and he must have been aware of the possibility that disclosure would lead to criminal prosecution. Indeed, after telling Turner of his involvement, he subsequently urged Turner not to "mess him up."

(Footnote omitted.) *Chambers v. Mississippi, supra* at 300-01.

The minimal evidentiary criteria which must be met before any such declaration can be considered as rising to constitutional stature are these: (1) the declarant's testimony is otherwise unavailable; (2) the declaration is an

admission of an unlawful act; (3) the declaration is inherently inconsistent with the guilt of the accused; and (4) there are such corroborating facts and circumstances surrounding the making of the declaration as to clearly indicate that it has a high probability of trustworthiness. *State v. Garrison, supra; State v. Howard, supra; State v. Wicker, supra; State v. Grant, supra.*

A review of the numerous reported decisions discussing *Chambers* indicates that most courts continue to be reluctant to fully embrace the declaration against penal interest exception to the hearsay rule for the reason as expressed in *Chambers*:

> It is believed that confessions of criminal activity are often motivated by extraneous considerations and, therefore, are not as inherently reliable as statements against pecuniary or proprietary interest.

*Chambers v. Mississippi, supra* at 299-300. Both science and law have recognized that false confessions can and do occur. F. Inbau & J. Reid, *Criminal Interrogation and Confessions* 115 (2d ed. 1967); T. Reik, *The Compulsion to Confess: On the Psychoanalysis of Crime and Punishment* 261 (1961); F. Shapiro, *Whitmore* (1969); *Miranda v. Arizona,* 384 U.S. 436, 455, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

Our present holding accords with the holdings of other courts which have also accepted the *Chambers'* rule within their existing body of evidentiary common law in the context limited by its facts. *See, e.g., People v. Dukett,* 56 Ill. 2d 432, 308 N.E.2d 590 (1974); *People v. Craven,* 54 Ill. 2d 419, 299 N.E.2d 1 (1973); *Ragler v. State,* 18 Md. App. 671, 308 A.2d 401 (1973).

ISSUE Two.

CONCLUSION. The trial court correctly excluded the decedent's statement from evidence. It was hearsay and did not meet the constitutional or minimal evidentiary criteria for admission into evidence as a declaration against penal interest.

The only one of the evidentiary criteria met by the writ-

ten statement of the defendant's partner in prostitution is the first one. The declarant was dead so her testimony was otherwise unavailable.

The unlawful act admitted to in the statement was an earlier act of prostitution rather than the assault with a deadly weapon with which the defendant was charged.

The declaration in question was not inherently inconsistent with the guilt of the accused, though some argument of relevance in that respect could be made.

The statement given to the police was an exculpatory statement given by a witness at the time that she herself was subject to being charged as an aider and abettor to the assault. There was nothing about the statement or the circumstances in which it was given to indicate the required "high probability of trustworthiness."

We find nothing about the facts of this case to equate it factually with *Chambers* and no showing was made that admission of the statement was in any way necessary to prevent a manifest injustice from being done to the defendant. Accordingly, this case does not approach being one where a constitutional mandate that the statement be admitted could arise.

Admission of the statement was properly refused by the trial court.

We affirm.

WILLIAMS, C.J., and JAMES, J., concur.

Petition for rehearing denied October 7, 1975.

Review denied by Supreme Court December 15, 1975.