[No. 5806–1. Division One. February 20, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. CHESTER E. VAN ANTWERP, *Appellant*.

Robert Boruchowitz of Seattle–King County Public
Defender, for appellant.

Norm Maleng, Prosecuting Attorney, and Mark H.
Sidran, Deputy, for respondent.

CALLOW, C.J.—The defendant, Chester E. Van Antwerp,
was found guilty of taking a motor vehicle without permis-
sion, RCW 9A.56.070, a class C felony. He appeals, con-
tending that the trial court erred in rejecting his challenge
to an instruction based on RCW 9A.08.010(1)(b), and in
finding, after a CrR 3.5 hearing, that certain statements by
the defendant were noncustodial in nature and, thus,
admissible in evidence.

At approximately 7:20 a.m. on March 29, 1977, a blue
Chevrolet Impala struck the rear end of a parked car. Two
witnesses observed a white male and female, subsequently
identified as Chester Van Antwerp and Coreen Svede,
immediately jump out of the car and run from the scene. A
short time after the accident, a Seattle police officer
received a radio broadcast telling of a white male and
female in their twenties running northbound from an acci-
dent involving a stolen car near the 100 block of Northeast

62nd Street. The officer proceeded to the vicinity and saw a white male and female in their twenties, who were breathing heavily and walking fast, some three blocks northbound from the accident. Believing they might be the suspects, he stopped and yelled, "Why were you running?" One of the two stated that they had not been running. The officer then approached them, explained why he wanted to talk to them, and asked where they were going and for identification. The defendant responded that he had been visiting a friend and that they were going to catch a bus out to Lake City Way where he lived.

Subsequently, a more detailed description of the suspects came over the radio and another officer arrived on the scene with the two witnesses to the accident, both of whom identified the defendant as having been the driver of the car. Van Antwerp and Svede were then arrested and advised of their *Miranda* rights. While papers were being filled out, the defendant gave as his address a different one than he had previously reported.

At trial the owner of the Chevrolet, which had been stolen the day before the accident, testified that before the car theft her car was locked, the glove box was locked, no keys were in the car, and that the interior of the car was "in beautiful condition." She, as well as the two witnesses to the accident, testified that at the time her automobile was recovered the back seat had been ripped off its hinges, papers from the glove box and visor were strewn all over, and a cardboard divider between the back seat and the trunk had been torn out.

The sole defense witness was Coreen Svede, who admitted she had known the car was stolen. Svede testified that on the evening before her arrest, two men brought the car and some stolen credit cards to her and asked her to dispose of them. The defendant, she said, knew nothing of the deal because he was "very sick" in bed. The next morning Svede woke the defendant and asked him to drive her to her methadone treatment. She reportedly told the defendant that she had borrowed the car from a friend. This was

the first time, she said, that she had seen the automobile. She insisted that there was a key for the car. Instead of taking the freeway, the defendant drove on back streets at Svede's request; he was so sick he didn't ask her why he was taking the back streets. When the accident occurred, she told Van Antwerp that she was sorry, but the car was stolen and they had better run.

On cross-examination Svede admitted that she would lie if that would help the defendant. Contrary to her prior testimony, she stated that she had examined the car the night it was delivered, and had told the defendant to take the back streets because they were on their way to sell some stolen credit cards. When asked why she was so positive that a key had been in the car, she stated that the defendant "would have known it was stolen, you know, if there was no key in it. Right? So I didn't want to tell him all that, so there was a key in it." During their ride she had noticed nothing unusual about the interior of the car.

Prior to trial, the defendant moved to suppress any statements made by the defendant to the police officer before the arrest occurred. The trial judge, after a CrR 3.5 hearing, ruled that there had been no custodial interrogation prior to the arrest and, therefore, *Miranda* warnings were unnecessary. The defendant proposed an instruction that defined "knowledge" as actual knowledge. This instruction was rejected by the trial judge; instead, an instruction based on RCW 9A.08.010(1)(b) was given over objection. The defendant appeals.

█ The jury was instructed that, in order to convict the defendant, it had to find beyond a reasonable doubt that he voluntarily rode in the automobile "knowing that it was unlawfully taken." Because "knowledge" is an essential element of the offense of taking a motor vehicle without permission, RCW 9A.56.070(1),[1] the trial court instructed the

---

[1] It is for the jury to determine if "knowledge" was proven. The element of knowledge is implicit in the statute as an element of the crime. *State v. Robinson,*

jury substantially in the language of RCW 9A.08.010(1)(b).[2] The instruction read:

A person knows or acts knowingly or with knowledge when:

(1) he is aware of a fact, facts or circumstances or result described by a statute defining an offense; or

(2) he has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining a crime.

Acting knowingly or with knowledge is established if a person acted intentionally.

The language of the second paragraph required the jury to convict if a reasonable person in the same situation as the defendant would believe that the car was stolen, even if the defendant had no subjective or actual knowledge of that fact. The defendant challenges the constitutionality of the reasonable person standard on three grounds asking: (1) Is it unjust and violative of due process to punish conduct without reference to the actor's actual state of mind, but with reference to what a reasonable person would have known? (2) Does the reasonable person standard create an unconstitutional presumption? (3) Does the reasonable person standard deprive the defendant of his right to a jury trial?

The defendant relies on *Morissette v. United States*, 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240 (1952), to support his claim that *actual* knowledge is a constitutional requirement of crimes such as this one which are mala in se. *Morissette*, relying on the common–law requirement that there be a

---

78 Wn.2d 479, 475 P.2d 560 (1970); *State v. Couet*, 71 Wn.2d 773, 430 P.2d 974 (1967).

[2]RCW 9A.08.010(1)(b) reads:

"(b) *Knowledge*. A person knows or acts knowingly or with knowledge when:

"(i) he is aware of a fact, facts, or circumstances or result described by a statute defining on offense, or

"(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense."

showing of guilty knowledge, held that mere omission from the conversion of government property statute, 18 U.S.C. § 641, "of any mention of intent will not be construed as eliminating that element from the crimes denounced." *Morissette v. United States, supra* at 263. The federal cases hold that where a statute requires "knowledge" to be proven, "knowledge" means actual knowledge or an awareness of the high probability of the existence of the fact in question. *United States v. Valle–Valdez,* 554 F.2d 911 (9th Cir. 1977); *United States v. Jewell,* 532 F.2d 697 (9th Cir.), *cert. denied,* 426 U.S. 951, 49 L. Ed. 2d 1188, 96 S. Ct. 3173 (1976); *Schaffer v. United States,* 221 F.2d 17, 54 A.L.R.2d 820 (5th Cir. 1955). Further, as recently noted in *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979), the *Morissette* case involved an issue of statutory rather than constitutional interpretation. The *Foster* case indicated that it is unnecessary for all statutory offenses, other than those which are mala prohibita, to contain a legislatively designated element of intent.

As stated in *State v. Tembruell,* 50 Wn.2d 456, 457–58, 312 P.2d 809 (1957):

RCW 9.01.010 [*cf.* Rem. Rev. Stat., § 2303] defines the word "knowingly," as applied to larceny cases, as follows:

". . . (4) The word 'knowingly' imports a knowledge that the facts exist which constitute the act or omission of a crime, and does not require knowledge of its unlawfulness; knowledge of any particular fact *may be inferred* from the knowledge of such other facts as should put an ordinarily prudent man upon inquiry. . . ." (Italics ours.)

The statute requires that the defendant have knowledge that the property was stolen. It *permits* knowledge on the part of the defendant to be inferred by the jury, if it is shown that such defendant knew of facts that would put a man of ordinary prudence upon inquiry. The statute is an evidentiary statute to guide the jury in determining from all the circumstances, whether the defendant had *actual knowledge* that the property was in fact stolen.

(Italics ours.) Therefore, instructions that the defendant acted "knowingly" if he was in possession of facts and circumstances which would put an ordinary, prudent man upon inquiry erroneously state that the jury might draw the inference of "knowledge" from the defendant's awareness of certain facts. *See State v. Tembruell, supra* at 458; *State v. Hunter,* 11 Wn.2d 282, 287–88, 118 P.2d 947 (1941); *State v. Rubenstein,* 69 Wash. 38, 41, 124 P. 135 (1912).

RCW 9A.08.010(1)(b), which supersedes RCW 9.01-.010, embodies a substantive rule of law. If the State proves beyond a reasonable doubt that (1) the defendant actually knew certain information, and (2) that the same information, if it were actually known by a reasonable person, would lead that reasonable person to believe facts exist which are described by a statute defining an offense, then the State has carried its burden of establishing that the defendant acted with the type of knowledge *required by statute to be shown* when "knowledge" is an element of an offense. The jury need only decide whether the State has proved the statutory definition of knowledge beyond a reasonable doubt.

Fairness is the hallmark of constitutional due process. Statutory enactments are presumed constitutional unless the contrary is shown beyond a reasonable doubt. *See State v. Dixon,* 78 Wn.2d 796, 804, 479 P.2d 931 (1971). We do not find it unfair to require an individual to adhere to a reasonable man standard. The legislature may even declare an act criminal irrespective of the intent or knowledge of the doer of the act. *See State v. Turner,* 78 Wn.2d 276, 283, 474 P.2d 91, 41 A.L.R.3d 493 (1970); *State v. Boggs,* 57 Wn.2d 484, 485–86, 358 P.2d 124 (1961); *Tacoma v. Lewis,* 9 Wn. App. 421, 426, 513 P.2d 85 (1973); *State v. Thrift,* 4 Wn. App. 192, 480 P.2d 222 (1971). As such, the State may criminalize certain forms of negligence and it may define knowledge on the basis of a prudent or reasonable man standard. *See State v. J–R Distribs., Inc.,* 82 Wn.2d 584, 607–08, 512 P.2d 1049 (1973), *cert. denied,* 418

U.S. 949, 41 L. Ed. 2d 1166, 94 S. Ct. 3217 (1974) (obscenity); *State v. Hedges,* 8 Wn.2d 652, 113 P.2d 530 (1941) (manslaughter); *State v. Constatine,* 43 Wash. 102, 106, 86 P. 384 (1906) (sale of liquor to a minor). *See also Bennett v. State,* 211 So. 2d 520, 526 (Miss. 1968), *cert denied,* 393 U.S. 320, 21 L. Ed. 2d 515, 89 S. Ct. 555 (1969) (knowing receipt of stolen goods). We hold that the instruction given and RCW 9A.08.010(1)(b) do not violate due process.

▮▮ The defendant contends that the objective standard of "knowledge" creates an unconstitutional presumption. A presumption allows, but does not require, the factfinder to infer an element of an offense upon proof of the operative facts. *Morissette v. United States, supra* at 273–76; *State v. Roberts,* 88 Wn.2d 337, 342–43, 562 P.2d 1259 (1977); *State v. Alcantara,* 87 Wn.2d 393, 552 P.2d 1049 (1976). Under RCW 9A.08.010(1)(b), if the State proves beyond a reasonable doubt that the defendant had information that would lead a reasonable man in the same situation to believe certain facts existed, the State has presented sufficient proof to permit a jury to find a defendant culpable, *i.e.,* that he acted with "knowledge." The statute defines "knowledge," but it does not create a presumption. Until factfinders can read the minds of other persons, the statute has determined that when it has been established that information was perceived by a person through his or her senses, that person has "knowledge" of a fact if a reasonable person who had perceived the same information would have concluded from the information received that the fact existed.

▮▮ The defendant contends that his right to a jury trial under article 1, section 22 of the Washington State Constitution is abrogated as to the fact of knowledge by RCW 9A.08.010(1)(b). His argument that the jury could find guilt without ever determining whether the defendant had knowledge assumes that the State must prove actual or subjective knowledge. All that is required is proof of objective knowledge under the reasonable men standard. The defendant received his jury trial on this issue.

■ The defendant's argument that his statements to the police officer were the product of custodial interrogation and should have been suppressed as not having been preceded by *Miranda* warnings, *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), is premised upon the assumption of a custodial interrogation. *State v. Hilliard,* 89 Wn.2d 430, 573 P.2d 22 (1977), concluded that interrogation becomes custodial when the investigating officer "has probable cause to believe that the person confronted has committed an offense . . ." *State v. Hilliard, supra* at 435 (*quoting State v. Creach,* 77 Wn.2d 194, 198, 461 P.2d 329 (1977)). Probable cause to arrest without a warrant is established when the officer has "reasonable ground for suspicion, supported by circumstances within [his] knowledge . . . to warrant a cautious person in believing that the accused was guilty of a crime." *State v. Hilliard, supra* at 435. In *Hilliard,* the defendant was stopped and questioned by two officers because he resembled the description given of the assailant by the victim, he was in the vicinity of the crime, and his automobile resembled the description given by the victim. The defendant gave a "plausible reason" for how he got to the area and why he was there. It was held that at this point the officers were justified in questioning the defendant on the basis of their suspicion. Without more, however, the level of probable cause was not reached and the questioning did not constitute a custodial interrogation. *State v. Hilliard, supra* at 435–36. As stated in *State v. Cloud,* 7 Wn. App. 211, 213–14, 498 P.2d 907 (1972):

> Custodial interrogation is . . . questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. It envisions that inquiry has acquired the taint of inquisition, that the satisfaction of curiosity has led to comprehension that a crime may have been committed by the answeror. When this corner is turned, the desire to understand becomes a hunt converging on the answeror. It is then, as a suspect, that he must be informed of his right to remain silent and to

have a lawyer present. The threat to the suspect that he will incriminate himself having arisen, he is entitled to be warned of the threat.

(Citations omitted.) The trial court's findings in this case that the officer had no intention of arresting the defendant, that he possessed only a subjective suspicion that the individuals were involved, and that he was merely investigating are borne out by the trial testimony. We conclude that the defendant's statements were not the product of a custodial interrogation.

The judgment is affirmed.

SWANSON and WILLIAMS, JJ., concur.

Reconsideration denied April 30, 1979.

Review granted by Supreme Court July 25, 1979.