[No. 7015-1-I.   Division One.   September 29, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. PHYLLIS EILEEN RUSSELL, *Appellant.*

*John Muenster* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *William Redkey, Deputy,* for respondent.

RINGOLD, J.—Phyllis Eileen Russell was convicted after jury trial of forgery and possession of stolen property (credit cards) in the first degree. She appeals from the judgment and sentence entered and from orders revoking suspended sentences entered on two previous convictions.

Russell was arrested when she attempted to purchase a coat for $250 and completed a charge slip using a credit card stolen from Carol Peterson. A defense witness testified that she had been present when a woman, claiming to be "Carol Peterson" borrowed $75 from Russell and, in exchange, authorized Russell to use the credit card.

Russell sought to introduce oral and written testimony concerning statements made by a Gloria Johnson. The

written statement was made to Russell's investigator and attorney 5 months after the crime had been charged. Although a material witness warrant had been issued, Johnson could not be found to testify.

The judge granted the State's motion to exclude the testimony relating to the statements by Johnson. The testimony would have been that Gloria Johnson had represented herself to be Carol Peterson and had given Russell the use of two stolen credit cards in that name in exchange for a loan.

The jury verdict was returned August 16, 1978. Judgment and sentence were entered September 20, 1978.

At sentencing, the judge also considered the State's request to revoke orders suspending sentence on two previous convictions. One of the suspended sentences was revoked on September 20, 1978. The other was revoked on October 13, 1978. Probation was to have ended on the two suspended sentences on June 1, 1978, and May 31, 1978, respectively. The only action appearing in the record, taken prior to the end of the probationary terms, is a bench warrant relating to the second suspended sentence. It was issued on May 31, 1978.

### KNOWLEDGE INSTRUCTION

The jury was instructed on the definition of knowledge in the words of the statute which reads:

(1) Kinds of Culpability Defined.

. . .

(b) *Knowledge.* A person knows or acts knowingly or with knowledge when:
(i) he is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b). In *State v. Van Antwerp*, 22 Wn. App. 674, 591 P.2d 844 (1979) we held that an instruction based on this statutory definition did not violate due process of law. That holding was reversed by the Supreme

Court in *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980).

■ The court held that a jury could interpret the instruction three ways. First, as creating a mandatory presumption which is "clearly unconstitutional." Second,

[it] redefines knowledge with an objective standard which is the equivalent of negligent ignorance. If the defendant is ignorant in a situation where the ordinary man would have knowledge, then the defendant would be deemed to have "knowledge" under the law. . . .

This interpretation of the statute, as redefining knowledge, is also unconstitutional.

*State v. Shipp, supra* at 515.

Third, it was held

that the statute merely allows the inference that a defendant has knowledge in situations where a reasonable person would have knowledge, rather than creating a mandatory presumption that the defendant has such knowledge.

*State v. Shipp, supra* at 512.

The giving of the "knowledge" instruction in the language of the statute does not require reversal in every case. Where the jury must have found that a defendant had actual knowledge the conviction will not be disturbed. In *Shipp,* in one of the cases considered, the court let stand a conviction where the jury, by convicting, must have found that the defendant acted intentionally. The issue of "knowledge" is subsumed when the jury is required by the instructions to find that a defendant acted intentionally. The same situation is present in the case at bench.

Here the jury was instructed:

To convict the defendant of the crime of forgery, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 12th day of March, 1978, the defendant falsely made or completed or altered a written instrument.

(2) That the defendant acted with *intent* to injure or defraud.

(Italics ours.) Instruction No. 5.

Instruction No. 6 informed the jury in the language of RCW 9A.08.010(1)(a) that

A person acts with *intent* or *intentionally* when acting with the objective or purpose to accomplish a result which constitutes a crime.

(Italics ours.) By convicting Russell of forgery the jury necessarily found that she acted intentionally. By law she also acted knowingly. RCW 9A.08.010(2) provides in part: "When acting knowingly suffices to establish an element, such element also is established if a person acts intentionally." "Inclusion of the ambiguous definition of knowledge in the jury instructions [was an error in form not substance as to the forgery charge] was therefore harmless error." *State v. Shipp, supra* at 518.

As to the possession of stolen property charge, the jury was informed by instruction No. 10 that the State was required to prove beyond a reasonable doubt that Russell acted with knowledge that the credit card had been stolen. There was evidence that Russell may have been ignorant of the fact the card was stolen. It is possible the jury may have considered this evidence yet convicted her because, interpreting the instruction impermissibly, it believed that an ordinary person would have known the credit cards were stolen. Thus the knowledge instruction was erroneous in the context of the possession of stolen property charge. *State v. Shipp, supra.* The conviction for possessing stolen property must therefore be reversed.

We recognize that, after finding an intent to defraud on the forgery charge, the jury was unlikely to have been misled by the knowledge instruction. There was, however, testimony that Russell had been authorized to use the credit card in exchange for a $75 loan. The jury could have found that Russell believed she had authority to charge $75 or a little more for interest but that she intentionally exceeded

her authority to use the card by attempting to purchase the $250 coat.

### EXCLUSION OF INCULPATORY STATEMENT

In *Chambers v. Mississippi,* 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973), the Supreme Court held that under certain circumstances declarations against penal interest cannot be excluded. In *State v. Gardner,* 13 Wn. App. 194, 198–99, 534 P.2d 140 (1975), this court set forth the minimal evidentiary criteria[1] which must be met before it is constitutionally mandated that a declaration against penal interest be admitted at trial:

1. The declarant's testimony is otherwise unavailable;

2. The declaration is an admission of an unlawful act;

3. The declaration is inherently inconsistent with the guilt of the accused;

4. There are such corroborating facts and circumstances surrounding the making of the declaration as to clearly indicate that it has a high probability of trustworthiness. The State concedes that the first and second requirements of *Gardner* are met in this case but argues that the third

---

[1]These criteria, set forth in *State v. Gardner,* 13 Wn. App. 194, 198–99, 534 P.2d 140 (1975) and approved in *State v. Young,* 89 Wn.2d 613, 574 P.2d 1171 (1978) "[equate] with the objective special circumstances found in *Chambers,* . . ." *State v. Gardner, supra* at 198. Evidence meeting these criteria is constitutionally required to be admitted. Prior to *Chambers,* Washington courts had not definitively ruled on the admissibility of the declaration against penal interest as an exception to the hearsay rule. *State v. Garrison,* 71 Wn.2d 312, 427 P.2d 1012 (1967); *State v. Gardner, supra; State v. Wicker,* 10 Wn. App. 905, 520 P.2d 1404 (1974); *State v. Howard,* 12 Wn. App. 158, 529 P.2d 21 (1974); *State v. Grant,* 9 Wn. App. 260, 511 P.2d 1013 (1973). 5 R. Meisenholder, Wash. Prac. § 441 (Supp. 1979). That exception, narrowly recognized in *State v. Gardner, supra,* has been broadened with the adoption of ER 804. The strict requirement that evidence be "inherently inconsistent" with guilt is not part of ER 804. That rule provides that the hearsay rule does not exclude statements that "so far tended to subject him to civil or criminal liability, . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." ER 804(b)(3). Where such a statement is offered to exculpate the accused "corroborating circumstances [must] clearly indicate the trustworthiness of the statement." ER 804(b)(3). Under this rule, a relevant statement is admissible even though it may not be absolutely inconsistent with the guilt of the accused so long as it is clearly trustworthy.

and fourth are not. We affirm the trial court because the trial court did not abuse its discretion in ruling that the fourth criterion was not met as to the forgery charge.

The determination whether corroborating circumstances clearly indicate the trustworthiness of a third party confession lies within the sound discretion of the trial court, which is best situated to weigh the reliability of the circumstances surrounding the declaration. We find in *Chambers v. Mississippi, supra* at 300–01 general considerations relevant to a determination of the trustworthiness of such confessions.

1. The time of the declaration and the party to whom the declaration was made.

2. The existence of corroborating evidence in the case.

3. The extent to which the declaration is really against declarant's penal interest.

4. The availability of the declarant as a witness. *See United States v. Guillette,* 547 F.2d 743 (2d Cir. 1976).

Considering the circumstances of Johnson's statement we believe that the trial court did not abuse its discretion in refusing to admit it. First, in *Chambers,* MacDonald confided in close friends shortly after the murder for which he claimed responsibility. Johnson, however, made her statement to the defense counsel 5 months after the incident. We agree with the trial court that a confession given to a close acquaintance shortly after a crime is committed is more reliable than a confession given to the defense months after the crime and shortly before trial.

A confession is not necessarily unreliable, however, simply because it lacks an element of spontaneity. The highest motive can spur a criminal to come forward on the eve of trial, confess guilt, and spare an innocent accused. It is only natural that such a declarant would contact the defense. The objective of rules of evidence is to do justice. If there are corroborating circumstances indicating a high degree of trustworthiness, an 11th–hour confession should be admitted.

Second, there were items of corroborating evidence as to each of MacDonald's confessions in *Chambers*. Moreover, the several confessions corroborated themselves. Here the sole corroborating evidence was the testimony of a close friend of Russell. Such corroboration offered on behalf of a close friend lacked the persuasiveness of the independent evidence in *Chambers*.

Moreover, defense counsel prepared the written statement for Johnson to sign. As he did so, he incorrectly recorded the address given him by Johnson. She purported to correct the address. During the trial, 5 days later, a detective attempted to serve a material witness warrant at the address Gloria Johnson gave defense counsel. He reported that the home had been vacant for a considerable period of time and that the grass was knee high. It can reasonably be concluded either that Johnson had given a false address or that she had known prior to giving the statement that she was leaving that address. In either event, this was evidence that puts into question the credibility of Johnson.

Third, the confession to murder by MacDonald was devastatingly incriminating and clearly against his penal interest. Johnson, in her statement,[2] did not explicitly declare that she had committed an unlawful act. Obviously there is an inference that she knew the wallet was stolen but her statement was much less incriminating than MacDonald's.

Finally, the fact that Johnson either gave a false address or intended to leave that address supported an inference that she did not expect to answer for the contents of her statement. Unlike MacDonald in *Chambers*, there was no

---

[2]Her statement was: "That Martin Shepard gave me a wallet with ID and credit cards with the name Carol Peterson on them. We went to see Phyllis Russell. There was another man there. Shepard introduced me as Carol Ann Peterson. I asked to borrow $75 and I gave Phyllis Russell the wallet and told her she could use my credit cards to buy stuff for up to $75 and a little more as interest on the loan.

"Phyllis was supposed to give the wallet back to Shepard. When I was there no one ever told Phyllis that the wallet was stolen."

opportunity to cross–examine and allow the jury to view her demeanor and weigh her responses. *See United States v. Guillette, supra.*

### REVOCATION OF PROBATION

Russell was arrested trying to use the stolen credit card on March 12, 1978. At that time she was on probation as the result of two prior convictions. Probation was due to expire May 31, 1978, on one of the prior convictions and June 1, 1978, on the other. Russell argues that the trial court was without jurisdiction to revoke the two suspended sentences because the probationary periods had expired prior to entry of the order.

In *State v. Mortrud,* 89 Wn.2d 720, 575 P.2d 227 (1978) the Supreme Court held that the trial court's authority to modify or revoke a suspended sentence terminates at the end of the probationary period. This is true even though the probationary period is less than the length of the suspended sentence. *State v. Ludwig,* 92 Wn.2d 109, 594 P.2d 920 (1979). The proceeding need not be completed prior to the end of the probationary period so long as the revocation petition is filed within the probationary period and revocation is diligently pursued under the circumstances. *State v. Hultman,* 92 Wn.2d 736, 600 P.2d 1291 (1979).

Here, both orders revoking the suspended sentences were entered after Russell's probation had expired. We have examined the record to determine what action was taken prior to the end of the probationary terms. The record contains neither petitions nor motions by the State for orders revoking probation. Neither are there motions to extend probation nor notices to Russell that it intended to seek probation revocation. The orders revoking probation are therefore void. *State v. Hultman, supra; State v. Mortrud, supra; State v. Hawkins,* 24 Wn. App. 925, 604 P.2d 185 (1979).

Affirmed in part; reversed in part.

CALLOW, C.J., and SWANSON, J., concur.