[No. 9736-9-I.   Division One.   July 16, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANCISCO E. CASTRO, *Appellant.*

---

*Roderick M. Jones,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Margaret Fitzpatrick, Deputy,* for respondent.

CORBETT, J.—Francisco E. Castro appeals from his conviction of murder in the first degree, RCW 9A.32.040, while armed with a deadly weapon, RCW 9.95.040.

The victim's body was discovered in a broom closet on the second floor of a Seattle hotel on July 9, 1980. He had been stabbed over 21 times. Detectives questioned Betty Jean Haro, who arrived at the scene a short time after the body was discovered. She acknowledged living in an apartment down the hall from the broom closet, but denied knowing the victim. The next day police were informed by Ms. Haro that bloody blankets discovered in a nearby alley were from her apartment. However, Ms. Haro insisted that she had been in Wenatchee and knew nothing about the victim's death. She consented to a search of her apartment and police found several items of evidence. Later she disclosed to police that the victim had been killed in her apartment and described the events leading to his death.

According to her testimony, Ms. Haro left for Wenatchee on July 2, allowing the defendant, who was a friend of hers, to use her apartment. She returned on July 8, and was told by the defendant that he had gone to Everett for a couple of days because he had robbed a man in Seattle who could identify him. She testified that the defendant showed her a watch he had taken in the robbery. She further testified that due to this incident, the defendant wanted to avoid being seen by police. According to Ms. Haro, when police came to her apartment that evening to take away an uninvited visitor, the defendant hid in the bathroom down the hall. Later that same evening, Luis Lavaris and the victim came to her apartment to see the defendant, and all four drank wine. Lavaris and Castro spoke in English and Spanish, which Ms. Haro did not understand. They appeared hostile toward the victim and spoke of his money. She invited them to spend the night and the victim fell asleep on the floor. Ms. Haro then saw the defendant hand Lavaris a long knife.

She testified further that she fell asleep on the floor and when she awoke she saw Lavaris and the defendant stand-

ing over the bloody body of the victim. She asked, "Is that man dead?" and the defendant said, "Yes." She testified that Lavaris went through the victim's pockets taking out money, and that both men had blood on their hands. Blood was found on the inside of the victim's pockets. She claimed that defendant told her never to mention his name, and she had lied to the police because she was afraid defendant would kill her.

Defendant was arrested in Portland on July 29, 1980, and charged with the murder. Lavaris was also charged with the murder but remained at large until after defendant was convicted and sentenced. Lavaris subsequently was taken into custody and made a statement accepting full responsibility for the crime. Upon discovery of the confession, defendant moved for a new trial, pursuant to CR 60(b)(11), on April 27, 1981. Appeal from denial of this motion has been consolidated with the appeal from the conviction.

Defendant's first assignment of error is the trial court's refusal to exclude Ms. Haro's testimony that defendant

robbed a guy and took his watch. And the guy knew him, and he could put his finger on him with the police, so he had to get out of town.

Defendant argues that there is no connection between the prior robbery and the crime charged, and the evidence so prejudiced the jury that reversal of the conviction should be granted. Evidence of unrelated crimes may not be admitted except where such evidence shows motive, intent, absence of accident or mistake, a common scheme or plan, identity or is somehow relevant and necessary to prove an essential ingredient of the crime charged. *State v. Mack,* 80 Wn.2d 19, 21, 490 P.2d 1303 (1971). Here, the testimony concerned prior criminal conduct with the same motive, *i.e.,* robbery, which occurred only a few days prior to the murder and was, therefore, relevant to show the defendant's motive or intent or absence of accident or mistake. ER 404(b). Although no direct evidence tied defendant to the commission of a prior robbery, he was connected to the crime by

Ms. Haro's testimony that he told her about it and showed her a watch he said he had taken. Evidence of other criminal activity need not be established beyond a reasonable doubt, but only by a preponderance of evidence. *State v. Tharp*, 96 Wn.2d 591, 594, 637 P.2d 961 (1981). The ultimate test of admissibility for this type of evidence is whether its relevance and necessity outweigh its prejudice to the defendant. *State v. Fernandez*, 28 Wn. App. 944, 951–52, 628 P.2d 818 (1980); *State v. Goebel*, 36 Wn.2d 367, 379, 218 P.2d 300 (1950). In admitting the evidence, the trial court commented: "It seems to me it clearly shows there was a scheme of thinking, of intent, of motive of the defendant, . . ." The trial judge is vested with wide discretion in determining if the danger of unfair prejudice outweighs its probative value. *State v. Tharp*, 27 Wn. App. 198, 206, 616 P.2d 693 (1980); *State v. Maesse*, 29 Wn. App. 642, 648, 629 P.2d 1349 (1981). Viewed in the context of the grisly evidence relative to the murder, the evidence of the other crime did not overcome the defendant's presumption of innocence. The trial court did not abuse its discretion by its admission.

The second assignment of error concerns the trial court's failure to caution the jury regarding Ms. Haro's testimony. Defendant contends that a cautionary instruction is mandatory where the prosecution relies solely upon the uncorroborated testimony of an accomplice, citing *State v. Carothers*, 84 Wn.2d 256, 269, 525 P.2d 731 (1974). However, the trial judge found as a matter of fact that Ms. Haro was not an accomplice to the murder, as defined in the criminal statutes. The test as to whether or not a witness is an accomplice is whether he could be indicted for the same crime for which the defendant is being tried. *Seattle v. Edwards*, 50 Wn.2d 735, 738, 314 P.2d 436 (1957). An accomplice must associate himself with the venture and participate in it as something he wishes to bring about and by action to make it succeed. *State v. McKeown*, 23 Wn. App. 582, 588, 596 P.2d 1100 (1979); *State v. Boast*, 87 Wn.2d 447, 456, 553 P.2d 1322 (1976). The witness' pres-

ence at the commission of the crime, even if she had knowledge of commission of the crime, would not subject her to criminal liability unless she shared in the criminal intent of the principal, demonstrating a community of unlawful purpose at the time the act was committed. *Boast,* at 456. No evidence was presented to suggest that the witness possessed any criminal intent to harm the victim or participated in any phase of the crime as something she wished to bring about. Her testimony was that she was sleeping when the murder was committed and she refused to share in the proceeds of the robbery. The trial court did not err by refusing the requested accomplice instruction in the absence of evidence that she was an accomplice.

■■ The defendant was charged with Lavaris as being an accomplice as well as principal in the murder.[1] No instruction defining "knowledge" or the required mental state was given or requested. The defendant contends that he was denied a fair trial by reason of the trial court's failure to define the knowledge element in the accomplice liability instruction. He argues that the jury should have been instructed to apply a subjective standard in deciding whether defendant had knowledge that his acts or statements would promote or facilitate premeditated murder, citing *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980), and *State v. Matthews,* 28 Wn. App. 198, 624 P.2d 720 (1981), in which the statutory definition of knowledge, RCW 9A.08.010(1)(b), was criticized. The trial court in a criminal case is required to define technical words and expressions, but not words and expressions which are of common understanding. *State v. Humphries,* 21 Wn. App. 405, 411, 586 P.2d 130 (1978); *State v. Hill,* 10 Wn. App.

---

[1]The jury was instructed on accomplice liability as follows:

"A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

"A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he either: (1) solicits, commands, encourages, or requests another person to commit the crime; or (2) aids or agrees to aid another person in planning or committing the crime. . . ."

851, 854, 520 P.2d 946 (1974). Whether words used in an instruction require definition is necessarily a matter of judgment for the trial court. *Seattle v. Richard Bockman Land Corp.,* 8 Wn. App. 214, 217, 505 P.2d 168 (1973). The word "knowledge" has an ordinary and accepted meaning. *State v. Shipp, supra* at 516. Here, use of the term "knowledge" in the context of the accomplice instruction was not misleading and the jury needed no further explanation.

The defendant assigns error to the failure of the trial court to grant his motion for a new trial based upon the newly discovered evidence of Lavaris' confession, which he argues, completely exonerates him. He contends that the confession would be admissible as a statement against interest, citing ER 804(b)(3), and its admission is constitutionally mandated by *Chambers v. Mississippi,* 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973).

■■ A new trial will be granted on the grounds of newly discovered evidence only if the following five requirements are met: (1) the evidence must be such that the results will probably change if a new trial were granted; (2) the evidence must have been discovered since the trial; (3) the evidence could not have been discovered before the trial by exercising due diligence; (4) the evidence must be material and admissible; and (5) the evidence cannot be merely cumulative or impeaching. *State v. Williams,* 96 Wn.2d 215, 223, 634 P.2d 868 (1981); *State v. Davis,* 25 Wn. App. 134, 138, 605 P.2d 359 (1980). The trial court is vested with broad discretion in ruling on a motion for a new trial based upon newly discovered evidence and a denial will not be reversed absent manifest abuse of that discretion. *State v. Letellier,* 16 Wn. App. 695, 700, 558 P.2d 838 (1977). *State v. Hobbs,* 13 Wn. App. 866, 869, 538 P.2d 838 (1975). CrR 7.6(a)(3). To determine whether the newly discovered evidence will probably result in a different outcome upon retrial, the trial court must determine the credibility, significance and cogency of the proffered evidence. *State v. Barry,* 25 Wn. App. 751, 758, 611 P.2d

1262 (1980). In *Chambers v. Mississippi, supra* at 300–02, the Supreme Court held that under certain circumstances declarations against penal interest cannot be excluded. The minimal evidentiary criteria which must be met before a declaration against penal interest is constitutionally mandated as admissible are: (1) the declarant's testimony is otherwise unavailable; (2) the declaration is an admission of an unlawful act; (3) the declaration is inherently inconsistent with the guilt of the accused; and (4) there are such corroborating facts and circumstances to indicate that it has a high probability of trustworthiness. *State v. Russell,* 27 Wn. App. 309, 314–15, 617 P.2d 467 (1980), citing *State v. Gardner,* 13 Wn. App. 194, 198–99, 534 P.2d 140 (1975).

The trial court was told by defense counsel at the time of motion for new trial that Lavaris had repudiated his statement and elected to not testify during his trial. The trial court ruled that Lavaris' statement did not have a high probability of trustworthiness by reason of its repudiation and its inconsistency with evidence received during the course of the trial. This lack of trustworthiness removes the mandate of its admissibility under the *Chambers* decision. In light of all the evidence, it is unlikely that a new trial would result in a different outcome. The trial court did not abuse its discretion in denying the motion for new trial based upon the statement of Lavaris.

■ The defendant's final assignment of error is the court's denial of his posttrial motion for a new trial based upon the cumulative effect of errors during the course of trial. He first argues that Ms. Haro's testimony could not have been believed by a rational trier of fact and thus, the evidence was not sufficient to support the jury's verdict. The jury was instructed to weigh credibility of each witness "in light of all the evidence." It chose to believe her testimony despite her inconsistent stories to the police. These discrepancies were skillfully detailed by defense counsel upon cross examination and forcefully pointed out in closing argument. It is the function of the jury to weigh the evidence and it would have been an abuse of discretion for

the trial judge to grant a new trial on that ground. *State v. Williams, supra.*

The defendant also argues that it was error for the court to allow the prosecutor to vouch for Ms. Haro's credibility by remarking in her opening statement that Ms. Haro told "the truth" to police when she told them Castro committed the murder. Even if the jury could have taken the remark out of context, as is urged here, the court cautioned the jury to disregard any remark, statement or argument not supported by the evidence or the law. We find no prejudicial error committed by the trial court, which properly denied the motion for new trial.

Affirmed.

WILLIAMS and RINGOLD, JJ., concur.

Reconsideration denied September 14, 1982.

Review denied by Supreme Court December 3, 1982.