[No. 4664–II. Division Two. September 1, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN
PARRIS, *Appellant*.

*Susan A. Dubuisson,* for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Bryan Fischnaller, Deputy,* for respondent.

REED, C.J.—John Parris appeals his conviction for unlawful delivery of a controlled substance. We affirm.

During early 1979, the Olympia Police Department conducted an undercover drug operation, utilizing plainclothes police officers and informants. On May 14, 1979, one of these informants, Gordon Milliron, arranged a "buy" of heroin through William DeHart, for Gary Hurley, an

undercover police officer. Under the terms of this buy Milliron and Hurley were to meet DeHart that night at a local Taco Time, where DeHart, in exchange for $90, would give them a half gram of heroin obtained, according to Milliron, "through his [DeHart's] source."

At approximately 10 p.m. that night, Milliron and Hurley met DeHart in the parking lot. According to Milliron, DeHart indicated that someone would shortly arrive with the heroin. Hurley then gave DeHart $100.[1] Several minutes later a silver Oldsmobile drove into the parking lot. DeHart got into the Oldsmobile and, after a short conversation with the driver, returned to Hurley and Milliron, telling them to come back in half an hour. DeHart then returned to the Oldsmobile, which started to pull away. The car stopped abruptly, and the inside dome light came on. Hurley later testified that he saw DeHart and the driver exchange something, but could not actually identify it as the money. Also at trial, both Hurley and Milliron identified the defendant, John Parris, as driver of the Oldsmobile.

DeHart then exited the Oldsmobile again and returned to Milliron and Hurley, telling them, according to Milliron, that "the drugs were being gotten." Milliron then asked DeHart, "Well, do you think he'll return with the drugs, or the money, and the quality and quantity would be accurate?" Milliron testified that DeHart answered, "Yes, I think so. There won't be any problem." During this encounter, however, DeHart never mentioned the name "John" or "Parris," although Milliron testified to referring to "John." At this point DeHart left the Taco Time. Within half an hour DeHart returned and handed Hurley a small package later determined to contain heroin. At approximately the same time Hurley observed the Oldsmobile leaving the parking lot of a nearby tavern.

In late September 1979, an information was filed charg-

---

[1] The additional $10 was apparently DeHart's "commission" for arranging the buy.

ing Parris and DeHart with unlawful delivery of a controlled substance. Parris was arrested and arraigned on December 4, 1979. On January 22, 1980, a notice setting a trial date of March 10 was mailed to counsel. On February 6, Parris filed a motion to reset the trial within 90 days of Parris' initial appearance. Immediately prior to his trial, Parris moved to dismiss for violation of the speedy trial rule, CrR 3.3, and, in the alternative, to sever his trial from DeHart's pursuant to CrR 4.4. His motion to dismiss was denied, but his motion to sever was granted.

Also prior to trial, DeHart invoked his Fifth Amendment privilege against self–incrimination, thus making him unavailable to testify at Parris' trial. Parris then moved to exclude any testimony which would include statements by DeHart, contending such statements constituted inadmissible hearsay and violated his rights under the confrontation clause of the constitution. This motion was denied.

After a jury trial, Parris was found guilty and this appeal followed. On appeal Parris raises three issues: (1) were his rights to a speedy trial under CrR 3.3 or the constitution violated; (2) were DeHart's hearsay statements admissible under ER 804(b)(3) as statements against DeHart's penal interests and, if so, did their admission violate his rights under the confrontation clause; and (3) did the trial court err in rejecting various jury instructions proposed by him?

As to the speedy trial issue, Parris contends that the March 10 trial date was more than 60 days[2] from the "applicable event" of CrR 3.3(b)(1) and thus violated the rule, requiring dismissal of his case under CrR 3.3(i).[3] In

---

[2]The parties have devoted portions of their briefs to arguing whether the 60–day period of CrR 3.3(b)(2) or the 90–day period of CrR 3.3(b)(3) applies to this case based on a parole hold placed on Parris. We need not resolve this dispute, however, for under our resolution of the issue Parris waived his rights under CrR 3.3 regardless of which time applied. Thus, for purposes of this appeal we assume that a 60–day period applies.

[3]For purposes of clarity the relevant portions of CrR 3.3 in effect at the time of trial are as follows:

"(a) **Responsibility of Court.** It shall be the responsibility of the court to

resolving this issue the trial court held, and we agree, that Parris had waived his right to a trial within 60 days by failing to move for a new trial date within 10 days of receiving the notice of the March 10 date. *See* CrR 3.3(d)(1). The notice of the March 10 trial date was mailed on January 22, 1980. Under the version of CrR 3.3 in effect *at the time*, Parris had 10 days from the day "of receiving the notice" to respond.[4] Parris' counsel had no record of when he received the notice. Consequently, under the circumstances of this case we believe it appropriate to add 3 days to the 10–day period under CR 6(e). *See* CrR 8.1. Even with the additional 3 days, however, the 10–day period ended on February 4, 1980. Thus, Parris' motion to reset the trial date filed on February 6, 1980 was untimely and constitutes a waiver of his right to object.

---

insure to each person charged with crime a trial in accordance with the provisions of this rule.

"**(b) Time Limits.**

"(1) The time limits set forth in subsections (b)(2) and (b)(3) shall commence to run from the date: (a) of the order binding the defendant over to the superior court following a preliminary hearing pursuant to JCrR 2.03 or (b) of the tenth day following the defendant's arrest in the event a preliminary hearing is not held or the charge is initially filed in the superior court.

"(2) A defendant unable to obtain pretrial release from custody shall be brought to trial within 60 days of the applicable event set forth in subsection (b)(1).

"(3) A defendant who is released from custody shall be brought to trial within 90 days of the applicable event set forth in subsection (b)(1).

" . . .

"**(d) Setting of Trial Date; Notice to Parties.**

"(1) The court shall, within 10 days of the defendant's arraignment in superior court, set a date for trial which is within the time limits prescribed by this rule, and notify all parties and their counsel of the date set. The notice shall set forth the date of the defendant's arraignment in court on the charge to be tried and the number of days which will elapse before the trial date. A party who objects to the date set upon the ground that it is not within the time limits prescribed by this rule must, within 10 days of receiving the notice from the court, move that the court set a trial within those time limits. Failure of a party, for any reason, to make such a motion shall be a waiver of the objection that a trial commenced on such date is not within the time limits prescribed by this rule."

[4]CrR 3.3 has since been amended. The 10–day period now begins from the day "the notice is mailed or otherwise given". CrR 3.3(f)(2).

Parris argues, however, that objecting to the trial date within the 10 days would have been pointless, as the 10th day for bringing such a motion would have been the 60th day after the defendant's appearance and thus a proper trial date could not have been set. We need not consider the merits of this argument, however, as it is based on the erroneous assumption that the 60–day period began to run on December 4, 1979. Under CrR 3.3(b)(1) the 60–day period did not begin until December 14, 1979, 10 days after Parris' arrest on December 4. Thus, had Parris brought his motion within the 10 days, it would have been well within the 60–day period.

 Parris also argues that because the trial court did not set the trial date within 10 days of his arraignment on December 4, as required by CrR 3.3(d)(1), his motion to dismiss should have been granted. We recognize that CrR 3.3(d)(1) dictates that the "court *shall,* within 10 days of the defendant's arraignment in superior court, set a date for trial". (Italics ours.) We believe, however, that the use of "shall" in this context is merely directory. In construing whether the word "shall" is mandatory or directory we must consider the nature of CrR 3.3, the purpose to be accomplished, and the consequences that would result from construing the rule in one way or another. *See State v. Huntzinger,* 92 Wn.2d 128, 594 P.2d 917 (1979). Further, where the directions of a rule are given merely with a view to the proper, orderly and prompt conduct of proceedings addressed by the rule, the use of "shall" generally should be considered directory unless the failure of performance will result in prejudice to the substantial rights of the defendant. *See State v. Miller,* 32 Wn.2d 149, 201 P.2d 136 (1948). The purpose of CrR 3.3 is to insure speedy justice insofar as reasonably possible. *State v. Williams,* 85 Wn.2d 29, 530 P.2d 225 (1975). Absent prejudice to a defendant, we fail to see how construing the 10–day provision regarding the setting of trial dates as mandatory would promote the purpose of CrR 3.3. To our mind this provision is more a matter of form rather than the essence of CrR 3.3. *See State v.*

*Miller, supra.* Consequently, because Parris has not shown how he was prejudiced by this violation of CrR 3.3, he is not entitled to dismissal.[5]

■ Finally, as to the speedy trial issue, Parris contends that even if CrR 3.3 has not been violated, his constitutional right to a speedy trial has been violated. We find this argument to be without merit. Under *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), the controlling case on this issue, the following four factors must be balanced to determine if a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. In balancing these factors in this case it is clear that Parris' trial 97 days after his arrest and less than a year from the commission of the crime did not prejudice him to any significant degree in his ability to present his case. *See State v. Sayers*, 29 Wn. App. 128, 627 P.2d 971 (1981).

■ The next issue, and the most troublesome one in this case, involves the introduction of DeHart's hearsay statements through the testimony of Milliron and Hurley. Parris contends that the trial court erred in ruling that DeHart's statements were against his penal interests and thus admissible as an exception to the hearsay rule under ER 804(b)(3). Parris further argues that even if the statements were admissible under ER 804(b)(3), their introduction violated his rights under the confrontation clause of the sixth amendment to the United States Constitution. Under the most recent Supreme Court decision discussing the confrontation clause, if hearsay statements of an unavailable declarant are admissible under an established exception to the hearsay rule, there is no violation of the confrontation clause.

In *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100

---

[5]We wish to emphasize that by our holding on this issue we do not question the validity of those cases holding that a violation of the 60– or 90–day provisions of CrR 3.3 requires dismissal. *See* CrR 3.3(i).

S. Ct. 2531 (1980), the Supreme Court summarized the proper constitutional analysis regarding hearsay statements of a declarant not present for cross–examination:

> In sum, when a hearsay declarant is not present for cross–examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. [Footnote omitted.]

(Footnote omitted.) Consequently, we read *Roberts* to adopt a 2–pronged test: (1) the declarant must usually be unavailable, and (2) the statements must bear an adequate indicia of reliability, *i.e.,* they must fall within a firmly rooted hearsay exception or there must be a particularized showing of trustworthiness. 4 J. Weinstein & M. Berger, *Evidence* 6 (Supp. 1980). Applying this test to DeHart's statements, we believe both prongs have been satisfied.

▮ Parris does not dispute that DeHart, by invoking his privilege against self–incrimination, was "unavailable" for purposes of testifying. *See* ER 804(a)(1); *State v. Solomon,* 5 Wn. App. 412, 487 P.2d 643 (1971); *United States v. Lang,* 589 F.2d 92 (2d Cir. 1978). As we see it, then, the crux of this appeal is whether DeHart's hearsay statements were properly admitted under ER 804(b)(3) as statements against his penal interests.[6] ER 804(b)(3) states:

---

[6]There can be no real dispute that the statement against penal interest exception to the hearsay rule is a "firmly rooted" exception. *Roberts,* 448 U.S. at 66. ER 804(b)(3) was adopted verbatim from Fed. R. Evid. 804(b)(3). Comment to ER 804. As noted by Judge Weinstein, the Federal Rules of Evidence are "a firmly rooted" set of hearsay exceptions. 4 J. Weinstein & M. Berger, *supra* at 6. Thus, while the case law in Washington prior to adoption in 1979 of the Rules of Evidence is unclear as to the extent to which statements against penal interests were admissible, *see State v. Russell,* 27 Wn. App. 309, 314 n.1, 617 P.2d 467 (1980), we believe the adoption verbatim of the federal rule satisfies the "firmly rooted" requirements of *Roberts. See State v. Lair,* 95 Wn.2d 706, 710–11, 630 P.2d 427 (1981).

**(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .

(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.[7]

In addition to "unavailability," we believe two requirements must be satisfied before hearsay statements qualify for admission as being against penal interest: (1) the statements must so far tend to subject the declarant to criminal liability that a reasonable man in his position would not have made the statement unless he believed it to be true, and (2) the statement must be corroborated by circumstances clearly indicating its trustworthiness.[8] *See United*

---

[7]At least one commentator has suggested that because of the legislative history of the federal version of ER 804(b)(3), this particular hearsay exception should not apply to inculpatory statements offered by the state against a defendant. 4 J. Weinstein & M. Berger, *Evidence* § 804(b)(3)[03] (1979). Other commentators, however, have persuasively demonstrated that the drafters of Fed. R. Evid. 804(b)(3) intended inculpatory statements to be admissible if the requirements of the exception were met. Tague, *Perils of Rulemaking Process: The Development, Application, and Unconstitutionality of Rule 804(b)(3)'s Penal Interest Exception*, 69 Geo. L.J. 851 (1981); Comment, *Federal Rules of Evidence 804(b)(3) and Inculpatory Statements Against Penal Interest*, 66 Cal. L. Rev. 1189 (1978).

[8]ER 804(b)(3) makes the corroboration requirement expressly applicable only to *exculpatory* statements. A review of the legislative history of Fed. R. Evid. 804(b)(3) indicates the failure to make the corroboration requirement applicable to inculpatory statements stems partly from a misreading of Supreme Court decisions regarding the confrontation clause and partly from legislative oversight. *See* 69 Geo. L.J. at 854 n.7; Comment, 66 Cal. L. Rev. at 1190 n.7, 1216 n.156. Recent federal cases construing Fed. R. Evid. 804(b)(3) have generally applied the corroboration requirement to inculpatory statements. *See United States v. Sar-*

*States v. Sarmiento–Perez,* 633 F.2d 1092 (5th Cir. 1981).

We believe these requirements have been met in this case. As to the first, DeHart's statements, as testified to by Hurley and Milliron, clearly indicated his involvement in an illicit drug transaction and "strengthened the impression that he had an insider's knowledge of the crimes." *See United States v. Barrett,* 539 F.2d 244, 252 (1st Cir. 1976).[9] Because ER 804(b)(3) speaks in terms of statements that "tend" to subject the declarant to criminal liability, we believe the ER rule encompasses statements that would have probative value in a trial against the declarant. *United States v. Thomas,* 571 F.2d 285 (5th Cir. 1978).

*miento–Perez, supra; United States v. Oliver,* 626 F.2d 254 (2d Cir. 1980); *United States v. Alvarez,* 584 F.2d 694 (5th Cir. 1978). We agree with these cases and believe the corroboration requirement should apply to inculpatory statements. The drafters of the federal rule left to the courts the task of delineating the requirements regarding admissibility of inculpatory statements because of the constitutional questions raised by such statements. *Alvarez,* 584 F.2d at 700. Applying the corroboration requirement to inculpatory statements is consistent with the "indicia of reliability" language in *Roberts,* 448 U.S. at 66. Further, failure to require corroboration of inculpatory statements would subvert the general scheme of the Rules of Evidence, for without the corroboration requirement the statement against penal interest exception would allow the state to circumvent the traditional safeguards surrounding the coconspirator exception to the hearsay rule, ER 801(d)(2)(v). *See Alvarez,* 584 F.2d at 701.

[9]At the pretrial hearing regarding the admissibility of DeHart's statements, both Hurley and Milliron testified. Their testimony at this hearing was substantially the same as their testimony at trial. After hearing this testimony at the hearing, Parris' counsel identified eight statements attributable to DeHart. The first statement was based on a telephone conversation between Milliron and DeHart setting up the "buy." The other statements all occurred at the Taco Time in the presence of both Milliron and Hurley. In ruling on the admissibility of the statements the trial court did not view each statement in isolation; rather, it viewed the statements as a whole in determining whether they were admissible. We believe that in doing so the trial court correctly interpreted ER 804(b)(3). Commentators have disagreed on this point. *See* 4 J. Weinstein & M. Berger, *Evidence* § 804(b)(3)[02] (1979). We believe, however, the better view is that the statements should be viewed as a whole in determining their admissibility; given the broad language of ER 804(b)(3) we do not believe the intent of the rule is to exclude collateral matter which, when viewed out of context, may not be disserving. *See United States v. Hoyos,* 573 F.2d 1111 (9th Cir. 1978); *United States v. Barrett,* 539 F.2d 244 (1st Cir. 1976). *But see State v. Darby,* 123 Ariz. 368, 599 P.2d 821 (Ct. App. 1979).

Clearly, DeHart's statements had such probative value. Further, we believe that under the circumstances of this case the statements would not have been made by a reasonable man unless he believed them to be true. At the time DeHart made the statements he was unaware he was dealing with an informant and a police officer; we are not faced with a situation where DeHart had a clear motive to "curry favor." Also, the circumstances of the transaction at the Taco Time indicate a serious transaction involving illicit drugs; under those circumstances one would not make such damaging statements lightly. Consequently, we hold DeHart's statements were truly against his penal interests.

We also believe there were sufficient corroborating circumstances to indicate the trustworthiness of the statements. In determining whether sufficient corroborating circumstances exist, courts have looked to the following factors: (1) whether there is an apparent motive for the declarant to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness. *United States v. Alvarez,* 584 F.2d 694, 702 n.10 (5th Cir. 1978).[10] In applying these factors to DeHart's statements, we find sufficient corroboration. As noted above, DeHart had no motive to lie. Both Milliron and Hurley heard the statements and were able to testify to their content.[11] Generally, the statements were made spontaneously in the sense that DeHart had little time to reflect on his statements. Finally, the statements were made at least partly to Milliron, whom DeHart had known prior to the meeting at the Taco Time. Consequently, we hold that DeHart's hearsay statements were properly admissible under ER 804(b)(3), and thus

---

[10]This list is by no means intended as an exclusive one. Other factors may also be relevant to determining whether sufficient corroboration exists.

[11]Parris, of course, was able to cross-examine both Milliron and Hurley thoroughly on whether the statements were in fact made.

under *Roberts* did not violate Parris' rights under the confrontation clause.

The final issue raised by Parris concerns three instructions proposed by him but rejected by the trial court. The rejected instructions were (1) an instruction stating that mere presence at the scene of a crime does not constitute a crime nor support a charge of being an accomplice; (2) an instruction regarding the failure of the defendant to testify; and (3) an instruction regarding testimony of an accomplice. We find no error in the rejection of these instructions. As to the first instruction, the trial court gave WPIC 10.51, 11 Wash. Prac. 97 (1977), dealing with the definition of an accomplice. *See State v. Rotunno,* 95 Wn.2d 931, 631 P.2d 951 (1981). Given the admissibility of DeHart's statements, sufficient evidence existed to justify this instruction. *See State v. Boast,* 87 Wn.2d 447, 553 P.2d 1322 (1976). As to the second instruction, the court gave WPIC 6.51, at 87, which cautions the jury not to consider the fact the defendant has not testified. This instruction adequately protected the defendant's constitutional concerns. *See State v. East,* 3 Wn. App. 128, 474 P.2d 582 (1970). Finally, because DeHart did not testify, Parris was not entitled to a cautionary instruction regarding the *testimony* of an accomplice.

Judgment affirmed.

PEARSON and PETRICH, JJ., concur.

Reconsideration denied September 24, 1981.

Review granted by Supreme Court November 20, 1981.