[Nos. 4440–II; 5026–II. Division Two. January 15, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. RUDOLPHO VALLADARES, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES L. MINIUM, *Appellant.*

64

*Jeffrey Steinborn* and *Timothy K. Ford,* for appellant Valladares.

*Charles L. Minium,* pro se.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Gary R. Tabor, Deputy,* for respondent.

REED, C.J.—Two criminal prosecutions arising from a common set of facts have been consolidated on appeal. The principal assignment of error concerns the trial court's admission of certain hearsay statements of a police informant, through the testimony of undercover agents, which inculpate one defendant in prior drug trafficking. This presents an issue similar to that addressed recently by this court in *State v. Parris,* 30 Wn. App. 268, 633 P.2d 914, *review granted,* 96 Wn.2d 1016 (1981). Because this area of the law has undergone rapid development, we believe it is desirable that the principles of *Parris* be further enunciated. For the reasons that follow we affirm the convictions of both defendants.

Barbara Campbell contacted Detective Fisher of the Longview Police Department on December 28, 1978. She advised Fisher that she had been dealing in cocaine in the Longview–Kelso area and that her source was the defendant, Rudolpho Valladares. Her story was related from a hospital room where she was recovering from a suicide

attempt. Campbell characterized Valladares as a major drug dealer and expressed concern that she was unable to make a $1,000 payment due on her last consignment. Fisher was not acquainted with Valladares and in order to properly investigate Campbell's story contacted Agent Sexton of the Washington State Patrol Drug Control Assistance Unit for help. According to the testimony of undercover officers, the following sequence of events took place during the next 3 months.

Sexton interviewed Campbell and offered to pay her debt to Valladares in exchange for an introduction whereby Sexton would assume the identity of a pimp from Vancouver. The meeting took place at a local bar. Sexton and Valladares discussed the possibility of Sexton supplying prostitutes for a Seattle "key club" with which Valladares was allegedly connected. During the conversation Valladares opened the subject of cocaine and Sexton expressed an interest in the drug.

As negotiations continued, Sexton advised Valladares of a large debt Sexton owed Las Vegas gangsters. This debt was due in three $80,000 installments. Sexton posited he might be able to persuade his creditors to allow him to invest a portion of an installment due shortly. Ostensibly to help convince his creditors of the quality of the merchandise, Sexton bought a 1–ounce sample of cocaine from Valladares. Sexton also purchased 2 more ounces for "his girls."

Thereafter, Agent Greppin, a federal drug enforcement agent, was brought in to pose as a "moneyman" from Las Vegas. Greppin related to Valladares a need for collateral. Consequently, Valladares introduced the agents to defendant Charles Minium, who had agreed to supply a timber deed to be held until delivery of the cocaine. As negotiations progressed, Valladares suggested to Sexton on the side that they hold back some of the cocaine to be purchased by Greppin by cutting it with an adulterant. Valladares would sell the extra and s ˙˙ the profit with Sexton. Greppin was to receive 2 pounds ˙ cocaine for $50,000.

The parties then met to consummate the deal, at which time Minium assigned the timber deed to the agents and Valladares accepted a briefcase containing the money. Valladares and Minium were placed under arrest.

At trial Valladares relied on an entrapment defense. His version of the facts differs accordingly. Valladares argues that his defense was shattered by the trial court's admission of hearsay statements of Barbara Campbell, through the testimony of narcotics officers, concerning his involvement in cocaine distribution. Defendant advances several reasons why admission of this testimony constitutes reversible error. First, Valladares urges this court to adopt a per se rule against the admissibility of hearsay statements made against penal interest which inculpate the accused. Defendant contends that *United States v. Sarmiento–Perez*, 633 F.2d 1092 (5th Cir. 1981), supports his position. Defendant misreads *Sarmiento–Perez;* rather than adopting a per se rule against the admissibility of such statements, the court merely concluded inculpatory statements are admissible under the same standard ER 804(b)(3) sets for exculpatory statements.[1] This court in *State v. Parris*, 30 Wn. App. 268, 633 P.2d 914 (1981), recently aligned itself with the weight of authority adopting the *Sarmiento–Perez* approach. *See, e.g., United States v. Riley*, 657 F.2d 1377 (8th Cir. 1981); *United States v. Palumbo*, 639 F.2d 123 (3d Cir. 1981); *United States v. Garris*, 616 F.2d 626 (2d Cir.), *cert. denied*, 447 U.S. 926, 65 L. Ed. 2d 1119, 100

---

[1]ER 804(b)(3) states;

"**(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

". . .

"(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

S. Ct. 3021 (1980); *United States v. Alvarez*, 584 F.2d 694 (5th Cir. 1978).

In *Parris*, this court held that hearsay statements which inculpate the accused may be admitted as being against a declarant's penal interest only if the following criteria are satisfied: (1) the declarant is unavailable; (2) the statements must so far tend to subject the declarant to criminal liability that a reasonable man in his position would not have made the statements unless he believed them to be true; and (3) the statements must be corroborated by circumstances clearly indicating their trustworthiness. *Parris*, 30 Wn. App. at 276. Here no dispute exists as to Campbell's unavailability. Valladares contends, however, that Campbell's statements were not sufficiently against her penal interest because Campbell, as a police informant, could reasonably have expected immunity from prosecution. He suggests that Campbell's real motivation for contacting the police was to get rid of a legitimate creditor.

■ Valladares construes the term "a statement against penal interest" too narrowly. As we noted in *Parris*,

> [b]ecause ER 804(b)(3) speaks in terms of statements that "tend" to subject the declarant to criminal liability, we believe the ER rule encompasses statements that would have probative value in a trial against the declarant.

*Parris*, 30 Wn. App. at 277.[2] Here Campbell's statements would certainly have probative value were she to stand trial. Our inquiry, however, does not stop at this threshold determination. "Whether a statement is in fact against interest must be determined from the circumstances of each case." Fed. R. Evid. 804(b)(3), Notes of Advisory Committee, at 592. Several factors favor the trial court's conclusion that the declarations were against Campbell's

---

[2]Support for adoption of a broad rather than a restrictive approach can be found in recent federal cases construing an identical federal rule. *See United States v. Riley, supra; United States v. Palumbo, supra; United States v. Lieberman*, 637 F.2d 95 (2d Cir. 1980); *United States v. Satterfield*, 572 F.2d 687 (9th Cir. 1978).

penal interest. First, we note that Campbell was not in custody—a factor often cited as indicative that the declarant might have been attempting to "curry favor" with the authorities. Second, a reasonable person would not likely admit to the commission of a serious crime knowing there was a chance, even if slight, that the admission could subject him to prosecution. *See State v. Lair*, 95 Wn.2d 706, 711, 630 P.2d 427 (1981). Additionally, Campbell was not offered immunity from prosecution. We note, further, that even where an informal understanding exists that immunity will be granted, such "immunity" is often contingent on supplying *truthful* information to the authorities. Finally, common sense dictates that Campbell would not concoct a story implicating Valladares in cocaine distribution simply to eliminate him as a legitimate creditor. If her story was fabricated, it should have been apparent to Campbell that officers investigating her story would quickly discover that the debt arose from a legitimate business transaction. Rather than paying Campbell's debt, the officers would more likely focus their investigation on her own confessed criminal activity. Further, if Valladares was a legitimate creditor, such false accusation would do little to relieve her from his collection demands. More importantly, if Valladares was involved in some other criminal enterprise, a false accusation would greatly enhance the risk of reprisals.

Next, Valladares contends that even if Campbell's declarations were against her penal interest, the statements should have been screened such that disserving portions were separated from those that are self–serving. Specifically, defendant argues that Campbell's statements with respect to his involvement in the cocaine trade were not disserving to Campbell and should have been excluded. Professor McCormick has outlined three alternatives for handling declarations containing both self–serving and disserving facts:

> First, admit the entire declaration because part is disserving and hence by a kind of contagion of truthfulness, all

will be trustworthy. Second, compare the strength of the self–serving interest and the disserving interest in making the statement as a whole, and admit it all if the disserving interest preponderates, and exclude it all if the self–serving interest is greater. Third, admit the disserving parts of the declaration, and exclude the self–serving parts.

(Footnotes omitted.) E. Cleary, *McCormick on Evidence* § 279, at 677 (2d ed. 1972). Although we acknowledged in *Parris* that the commentators are not in accord as to which approach is preferable, we said

the better view is that the statements should be viewed as a whole in determining their admissibility; given the broad language of ER 804(b)(3) we do not believe the intent of the rule is to exclude collateral matter which, when viewed out of context, may not be disserving.

*Parris,* 30 Wn. App. at 277 n.9. Thus, Campbell's statements implicating Valladares in cocaine distribution were admissible.[3]

Valladares next argues that Campbell's statements were not corroborated by circumstances indicating their trustworthiness—that, on the contrary, Campbell was motivated by a desire to "curry favor" with the authorities to rid herself of a creditor. Also, defendant notes that at the time these statements were made Campbell was in the hospital having just attempted suicide. Valladares argues that this is indicative of an unsound mind. We have already examined Valladares' contention that Campbell fabricated her story to rid herself of a creditor. We find it difficult to evaluate the impact on Campbell's reliability of her attempted suicide shortly before contacting Detective Fisher. Rather than indulge in speculation, we believe it more profitable to examine the record for other evidence that would clearly corroborate Campbell's story. The State contends that this

---

[3]Even if we were to adopt McCormick's third approach as advocated by Valladares, we would not be inclined to characterize Campbell's acknowledgment of Valladares' involvement in the cocaine trade as entirely self–serving. By implicating Valladares, Campbell was admitting participation in a conspiracy to distribute cocaine. *See United States v. Palumbo, supra.* (Adams, J., concurring).

corroboration can be found in (1) the testimony of under-cover agents that defendant himself initiated the subject of cocaine; (2) defendant's statements to agents about his past deliveries to Campbell; (3) Valladares' statements regarding his dealing in large quantities; and (4) Valladares' calendar book which contained a running account of sums owing from Barbara Campbell. We find the corroboration from Valladares' own lips persuasive.

Defendant responds that these factors are not cor-roborative because they do not come from the circum-stances surrounding the making of the declaration. Valladares contends that it is not fair to draw corroboration from other evidence of guilt. We disagree. No logical reason exists for confining the source of corroboration as advocated by defendant. In *Chambers v. Mississippi,* 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973), the defendant assigned error to the trial court's exclusion of the testimony of three witnesses who would have testified concerning a third party's confession. The United States Supreme Court found the hearsay statements admissible because each was "cor-roborated by some other evidence in the case". *Chambers,* 410 U.S. at 300. The court then listed various corroborating factors which lent credence to the statements but were not circumstances surrounding the making of the declaration. We adopt this view and hold that corroboration may come from any competent evidence that bolsters the reliability of the declarant's statement.

Valladares asserts that his Sixth Amendment right to confront witnesses was violated by the admission of Campbell's statements. He specifically urges that his right to cross-examine was infringed upon, citing the recent United States Supreme Court decision, *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980). *Roberts* adopted a 2-pronged test for analyzing hearsay statements with respect to the Sixth Amendment: (1) the declarant must usually be unavailable; and (2) the statements must bear an adequate indicia of reliability, *i.e.,* they must fall within a firmly rooted hearsay exception or there must be a

particularized showing of trustworthiness. Defendant claims that statements against penal interest do not constitute a "firmly rooted" hearsay exception; thus, particularized guaranties of reliability must be found—an element Valladares argues is lacking in this case. We believe there has been a particularized showing of trustworthiness.[4] This is so because we are unable to discern any difference between the type of corroboration necessary to satisfy ER 804(b)(3) and the "particularized guarantees of trustworthiness" sufficient to satisfy the Sixth Amendment. *Roberts,* 448 U.S. at 66. Therefore, we hold that a statement which satisfies the requirements for admission under ER 804(b)(3) has concurrently satisfied the second prong of *Roberts*—namely that the statement bears an adequate indicia of reliability. As discussed earlier, sufficient corroboration does in fact exist.

 We turn now to Valladares' final argument concerning the admissibility of Campbell's hearsay statement. Defendant asserts that the trial court erred by failing to rule that the probative value of Campbell's declarations was outweighed by their prejudicial effect. This oversight was especially damaging, according to Valladares, because evidence of prior crimes portrayed him as a bad person. We evaluate defendant's argument mindful that the balancing test contemplated by ER 403 is left to the discretion of the trial court whose decision will not be overturned except for abuse. *State v. Gallo,* 20 Wn. App. 717, 582 P.2d 558 (1978). Because defendant relied on an entrapment defense, such evidence was particularly relevant on the issue of Valladares' predisposition to commit the offense. We find no indication in the record before us that the trial court abused its discretion.

 We now shift to Valladares' argument that acquittal

---

[4]Further, we adhere to our position that the statement against penal interest exception to the hearsay rule is "firmly rooted," because it finds expression in a rule adopted by our State Supreme Court after careful deliberation and upon the recommendation of the State Judicial Council. *See Parris,* 30 Wn. App. at 275 n.6.

of a sole codefendant precludes his conviction for conspiracy. Defendant recognizes that RCW 9A.28.040(2)(d) provides that acquittal of a coconspirator is not a defense to criminal conspiracy but argues this case is distinguishable. First, defendant notes that RCW 9A.28.040(2)(d) is fashioned after the Model Penal Code but that the Model Penal Code would not countenance the conviction of one of two conspirators in a *joint* trial where the other is acquitted. As support for this argument, Valladares cites the following commentary:

> Whether in a joint trial of an accomplice and the person charged with perpetration of the crime, an acquittal of the latter should require the acquittal of the former, . . . ought to be governed by the general position taken with respect to the validity of an inconsistent verdict.

Model Penal Code § 2.04(6), Comment (Tent. Draft No. 1, 1953). Defendant maintains that inconsistent verdicts are void in Washington, citing *State v. Wedner,* 24 Wn. App. 346, 601 P.2d 950 (1979). Reliance on *Wedner* is ill–founded. *Wedner* simply holds that if a jury's general verdict cannot be reconciled with an answer to a special interrogatory, the verdict is void. The prevailing view is that general verdicts need not be consistent. Annot., *Inconsistency of Criminal Verdicts as Between Two or More Defendants Tried Together,* 22 A.L.R.3d 717 (1968). The rationale for this position is that the jury may, within its discretion, decide that one defendant should be punished and the other defendant should not. Further, *State v. Orange,* 78 Wn.2d 571, 478 P.2d 220 (1970) supports the State's position on an analogous set of facts. In *Orange,* the defendant's conviction was allowed to stand even though codefendants in a riot charge were acquitted. The court reasoned that there were *unnamed* third persons with whom the defendant could have rioted. Here there is evidence from which the jury could have concluded that the defendant conspired with one or more government agents.

Valladares also challenges the validity of his conspiracy

conviction by asserting Wharton's rule.[5] He argues that Wharton's rule requires that the conspiracy merge with the substantive offense because delivery of cocaine requires only two persons for commission of the offense and defendant claims only two participated. The State's theory is that Valladares conspired with Agent Sexton to deliver cocaine to Agent Greppin. Defendant responds that the State's position is untenable because the information charged only that Valladares and Minium had conspired.

At first blush defendant appears to have uncovered a serious notice problem. A closer examination of the information, however, reveals that Valladares was charged to have conspired with Minium to *deliver* cocaine. It is clearly implicit in the information that delivery to some third party was contemplated. Although the information could have been more specific, we find no prejudice to the defendant when the information at least implicitly named a third party.[6]

■ Defendant next argues that the conviction for conspiracy should not stand when all but one of the conspirators are police agents. The gist of defendant's argument is that police can turn any drug buy into a conspiracy through the simple expedient of enlisting the aid of another officer. This, Valladares asserts, constitutes entrapment pursuant to RCW 9A.16.070,[7] or is police conduct so outrageous as to

---

[5]Wharton's rule, a widely recognized rule of construction, states that "[a]n agreement between two persons to commit an offense does not constitute conspiracy when the target offense is so defined that it can be committed only by the participation of two persons". (Footnote omitted.) 4 C. Torcia, *Wharton on Criminal Law* § 731, at 545 (1981).

[6]We note that RCW 10.37.056(5) provides in relevant part:
"No indictment or information is insufficient . . .
". . .
"(5) For any other matter which was formerly deemed a defect or imperfection, but which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

[7]RCW 9A.16.070 states:
"Entrapment. (1) In any prosecution for a crime, it is a defense that:

violate due process. Defendant fails to recognize that Minium, although acquitted, may have been considered by the jury as a coconspirator. Moreover, even if police officers were the only other participants, this does not taint defendant's conspiracy conviction under the "unilateral approach" to conspiracy. Model Penal Code § 5.03, Comment at 104–05 (Tent. Draft No. 5, 1956). It does, however, suggest the possibility of entrapment. This defense was presented to the jury and rejected.

█ Shortly after Valladares' arrest, a warrantless search of his vehicle resulted in the discovery of a suitcase in the trunk containing paraphernalia relating to cocaine testing, consumption and distribution. Also seized was a briefcase in defendant's personal possession which contained a quantity of cocaine, a kit for using cocaine and an appointment book. Valladares' trial counsel made a motion to suppress this evidence but later withdrew it. Now, defendant claims that although no objection was made at trial to the admission of this evidence, issues of constitutional magnitude can be raised for the first time on appeal. *See* RAP 2.5(a)(3). The State maintains that Valladares waived or abandoned his constitutional rights by withdrawing his motion to suppress the evidence. We agree. Defendant has misconstrued RAP 2.5(a)(3), a limited exception to the general rule that issues may not be raised for the first time on appeal. Because this exception is being misread with increasing regularity, and is becoming a catchall, we believe some clarification is desirable. First, it should be understood that RAP 2.5(a)(3) in no way affects the discretion of this court to refuse review of issues not raised below. The rule merely enunciates our long–standing practice of addressing error

---

"(a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and

"(b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.

"(2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime."

where justice clearly demands we do so. *See* Washington State Bar Ass'n, *Washington Appellate Practice Handbook,* Comment to RAP 2.5 (1980). This discretion will generally be exercised in favor of review when there exists "manifest error affecting a constitutional right." RAP 2.5(a)(3). The very verbiage of the rule contemplates a *trial* error involving a *trial right*—due process right—as opposed to a pretrial right. RAP 2.5(a)(3) may not be invoked merely because defendant can identify a constitutional issue not litigated below. *State v. Williams,* 30 Wn. App. 558, 636 P.2d 498 (1981); *State v. Darden,* 30 Wn. App. 460, 635 P.2d 760 (1981).

 With these principles in mind we believe the propriety of invoking RAP 2.5(a)(3) in this case turns on whether a clear violation of due process resulted from the admission of evidence, without objection, that may have been obtained in violation of defendant's Fourth Amendment rights. It must be remembered that, historically, otherwise competent and relevant evidence, even though illegally or unconstitutionally obtained, is not thereby rendered inadmissible. There is no constitutional per se prohibition against its use, *i.e.,* the use itself violates no constitutional right. True, the exclusionary rule was devised by the courts to afford meaning to such rights. But the defendant must take advantage of the rule and affirmatively seek its protection. *State v. Baxter,* 68 Wn.2d 416, 413 P.2d 638 (1966). By withdrawing his motion to suppress, Valladares simply elected not to take advantage of the mechanism which the State has placed at his disposal for excluding the evidence. Defendant thus waived or abandoned his Fourth Amendment objections. *State v. Rice,* 24 Wn. App. 562, 603 P.2d 835 (1979); 3 W. LaFave, *Search and Seizure* § 11.1, at 474 (1978).

Nor can defendant take any comfort in *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976), or *State v. Peterson,* 73 Wn.2d 303, 438 P.2d 183 (1968). Both cases involved a constitutionally deficient jury instruction, the giving of which deprived a defendant of his due process right of a fair trial

by jury. *See also State v. Crigler,* 23 Wn. App. 716, 598 P.2d 739 (1979) (erroneous instruction—denial of due process); *and see State v. Lampshire,* 74 Wn.2d 888, 447 P.2d 727 (1968) (improper comment on evidence, Const. art. 4, § 16); *State v. Richard,* 4 Wn. App. 415, 482 P.2d 343 (1971) (review refused where alleged comment on evidence not revealed in the record). There being no "manifest error affecting a constitutional right", defendant's challenge will not be heard. RAP 2.5(a)(3).

Defendant Minium appears pro se. His brief cites no authority and makes no reference to the record. RAP 10.3. Minium's chief contention is that the search and seizure of LSD from his person violated Fourth Amendment principles. The search was made incidental to a lawful arrest. This procedure fully comports with current search and seizure standards. *See United States v. Robinson,* 414 U.S. 218, 38 L. E. 2d 427, 94 S. Ct. 467 (1973). We have sifted through Minium's other assignments of error and find them to be without merit.

Affirmed.

PEARSON and PETRICH, JJ., concur.

Reconsideration denied February 9, 1982.

Review granted by Supreme Court May 7, 1982.