# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59381-5-II |
| Respondent, | |
| v. | |
| ALEXANDER MICHAEL MEDSKER, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Alexander Medsker appeals his conviction for one count of attempting to elude a police officer. For the first time on appeal, Medsker argues that the trial court erred by failing to provide a unanimity[1] instruction, which violated his right to a unanimous jury verdict. Because Medsker failed to show that there was a manifest error affecting a constitutional right, his claim of error was not preserved for review. Accordingly, we affirm.

---

[1] A unanimity instruction is also referred to as a *Petrich* instruction. *E.g.*, *State v. Petrich*, 101 Wn.2d 566, 569-70, 683 P.2d 173 (1984) (holding that a jury must unanimously agree "that the criminal act charged in the information has been committed"), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988), *abrogated on other grounds by In re Stockwell*, 179 Wn.2d 588, 316, P.3d 1007 (2014); *State v. Aguilar*, 27 Wn. App. 2d 905, 924, 534 P.3d 360 (2023).

FACTS

I.    THE PURSUIT[2]

On February 24, 2023, Officer Sophal Heang was doing a routine patrol in Lacey.  Heang was working the graveyard shift and was driving a marked police vehicle.  Around 10:00 p.m., Heang observed a gold Chrysler PT Cruiser[3] driving without a rear license plate affixed to the bumper.  Heang got behind the vehicle and initiated his emergency lights, but the vehicle did not pull over.  The vehicle "wasn't speeding[,]. . . it just refused to stop."  Report of Proceedings (RP) (Feb. 13, 2024) at 186.  Pursuant to department policy, Heang terminated the pursuit shortly thereafter.

Twenty minutes after first encountering the gold PT Cruiser, Heang saw the same vehicle. Heang proceeded to pull behind the vehicle.  This time, however, the vehicle began to drive "erratically," accelerating its speed and "weaving in and out of traffic."  RP (Feb. 13, 2024) at 184. After Heang initiated his lights, the vehicle pulled over into a gravel parking lot.  But when Heang exited his patrol vehicle, the gold PT Cruiser "sped away" with its headlights off.  RP (Feb. 13, 2024) at 185.  Heang notified dispatch that he had "probable cause for eluding," which was communicated to other police departments on different radio frequencies.  RP (Feb. 13, 2024) at 186.

Sergeant Knute Lehmann,[4] who was also on patrol that evening, was notified of a vehicle eluding the Lacey Police Department after an unsuccessful traffic stop.  Lehmann pulled over and

---

[2] This section summarizes the evidence presented at trial during the State's case.  Medsker did not present any evidence at trial, nor did he choose to testify.

[3] It was later determined that Medsker was the driver of the gold PT Cruiser.

[4] At the time of the incident, Lehmann was a patrol deputy with the Thurston County Sheriff's office and was promoted to sergeant afterward.

waited to see if the vehicle was coming his direction. Approximately two to three minutes later, Lehmann observed a gold PT Cruiser (without its headlights on and no rear license plate) enter a roundabout. After Lehmann began to follow the gold PT Cruiser, the vehicle began to speed up. Utilizing the radar mounted in Lehmann's vehicle, he determined the gold PT Cruiser was going around 70 miles per hour in a 35 miles-per-hour zone.

Lehmann continued to follow the vehicle, maintaining speeds around 40 to 45 miles per hour. The gold PT Cruiser slowed down for a short period due to other vehicles on the road, which allowed Lehmann to catch up and maintain a visual of the vehicle.[5] During this period, Lehmann was communicating with surrounding law enforcement, attempting to coordinate spike strips to be deployed and flatten the gold PT Cruiser's tires.

Again, the suspect's vehicle slowed down, and Lehmann observed that one of the brake lights was broken. The gold PT Cruiser turned its lights off for a short period, but proceeded to turn them back on shortly thereafter. At this point, there was not a lot of traffic on the roads. Lehmann continued to pursue the vehicle and was joined by Deputy Shawn Graves who was following behind Lehmann. The gold PT Cruiser continued to maintain speeds around 70 miles per hour in a 50 miles-per-hour zone.

The gold PT Cruiser proceeded to drive toward the Nisqually Reservation, maintaining speeds around 70 miles per hour. Upon reaching the reservation, the gold PT Cruiser entered a roundabout, illegally changed lanes, and Officer Noelle Winchell, who was with the Nisqually Police Department and was in a marked police vehicle, joined the pursuit. Winchell activated her

---

[5] Department policy authorized Lehmann to trail the vehicle, which "encompasses maintaining normal speeds, obeying laws of the road and trying to keep the violator within eye distance." RP (Feb. 13, 2024) at 198. Lehmann was "not authorized to use [his] lights and sirens to move traffic out of [his] way to continue to view [the] person or [the]vehicle" he is following. RP (Feb. 13, 2024) at 198.

lights and sirens and followed immediately behind the gold PT Cruiser. In order to catch up to the suspect's vehicle, Winchell was traveling at 78 miles per hour, and both vehicles were headed toward the Red Wind Casino, the busiest part of the reservation.

When the gold PT Cruiser reached the Red Wind Casino, there were many pedestrians out and several vehicles on the road. The suspect's vehicle was driving in both the right and left lanes, entering into oncoming traffic, and running a red light. At one point, there were vehicles that honked and swerved away from the gold PT Cruiser as it attempted to pass traffic on the left. Officers successfully deployed a spike strip, and rubber from the suspect's vehicle's tires could be seen "flying everywhere." RP (Feb. 13, 2024) at 260. Despite this, the gold PT Cruiser continued at a reduced speed, but the spike strip "did not change the way the driver was driving the vehicle." RP (Feb. 13, 2024) at 261.

After leaving the Red Wind Casino area, the gold PT Cruiser headed toward a residential area. Radio communications indicated that officers had been authorized to execute a PIT[6] if speeds were under 25 or 35 miles per hour. Because Winchell was not authorized to perform the maneuver under her department's policies, she "pulled off and let the other officers behind [her] go ahead." RP (Feb. 13, 2024) at 262. Officer Joseph Murphy with the Yelm Police Department pulled immediately behind the suspect's vehicle and successfully executed a PIT, causing the gold PT Cruiser to run off the side of the road and crash into a fence.

After the gold PT Cruiser had come to a stop, officers ordered the driver to exit the vehicle. Medsker was identified as the suspect driving the gold PT Cruiser and was taken into custody. There was no one else in the vehicle. Medsker was transported to a medical facility after he alleged that he had swallowed fentanyl.

---

[6] A pursuit intervention technique (PIT) is used by officers to apprehend fleeing vehicles.

Medsker was charged with one count of attempting to elude a pursuing police vehicle in violation of RCW 9.94A.834. The State also charged Medsker with an enhancement for endangering "one or more persons other than the defendant or the pursuing law enforcement officer." Clerk's Papers at 1.

II.     TRIAL

After both the State and Medsker rested their case, there was no discussion regarding the need for a unanimity instruction. Before closing arguments, the court asked whether defense counsel had any exceptions or objections to the State's proposed instructions. In response, defense counsel stated, "No objections, Your Honor. I had sufficient time to go over them which is why I did not submit my own instructions because what [the State] has submitted I believe is sufficient and everything appears to be legitimate and legal." RP (Feb. 13, 2024) at 296.

The next day, the court provided another opportunity for the parties to review the instructions. Again, the court asked defense counsel if it had any objections or exceptions to the proposed instructions to which defense counsel replied, "Nothing from the defense." RP (Feb. 14, 2024) at 304.

The jury found Medsker guilty of one count of attempting to elude a pursuing police officer. The jury did not render a verdict on the "endangerment" enhancement. The trial court sentenced Medsker to 12 months and 1 day of confinement.

Medsker appeals.

ANALYSIS

I.     MEDSKER FAILED TO PRESERVE HIS ARGUMENT

For the first time on appeal, Medsker argues that the court erred by failing to provide a unanimity instruction, depriving him of his right to a unanimous jury verdict. Because there is no

manifest error affecting a constitutional right, and the issue was not raised at trial, Medsker's claim is not preserved for appeal.

A.      RAP 2.5

Generally, courts do not consider issues raised for the first time on appeal.  *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995); RAP 2.5(a).  An issue, however, may be raised for the first time on appeal if there is (1) a "lack of trial court jurisdiction," (2) a "failure to establish facts upon which relief can be granted," or (3) a "manifest error affecting a constitutional right."  RAP 2.5(a); *McFarland*, 127 Wn.2d at 332-33.  Critically, RAP 2.5(a)(3) "is not intended to afford criminal defendants a means for obtaining new trials whenever they can 'identify a constitutional issue not litigated below.'"  *State v. Scott*, 110 Wn.2d 682, 687, 757 P.2d 492 (1988) (quoting *State v. Valladares*, 31 Wn. App. 63, 76, 639 P.2d 813 (1982), *aff'd in part, rev'd in part*, 99 Wn.2d 663, 664 P.2d 508 (1983)).  Instead, the exception "encompasses developing case law while ensuring only certain constitutional questions can be raised for the first time on review."  *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).  And even when a defendant satisfies RAP 2.5(a)(3), the error is still subject to review under the constitutional harmless error standard.  *Scott*, 110 Wn.2d at 687 (explaining that RAP 2.5(a)(3) "does not help a defendant when the asserted constitutional error is harmless beyond a reasonable doubt").

To satisfy RAP 2.5(a)(3) "and raise an error for the first time on appeal, [a defendant] must" first demonstrate that "the error is truly of constitutional dimension."  *O'Hara*, 167 Wn.2d at 98.  Then, a defendant must prove that the error was manifest.  *Id.*  Stated differently, "[t]he defendant must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial."  *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007).  If a

6

party raising an argument for the first time on appeal fails to satisfy the exception articulated in RAP 2.5(a)(3), the claim of error is not reviewable.

Courts "do not assume the alleged error is of constitutional magnitude;" instead, "[w]e look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error." *O'Hara*, 167 Wn.2d at 98.

"'Manifest' in RAP 2.5(a)(3) requires a showing of actual prejudice." *Kirkman*, 159 Wn.2d at 935. Actual prejudice requires a "'plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* (internal quotation marks omitted) (quoting *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)).

B.      Analysis

Here, Medsker failed to argue a need for a unanimity instruction at multiple opportunities. Therefore, Medsker cannot raise this claim for the first time on appeal unless he demonstrates that the issue implicates a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Medsker's claim does implicate a constitutional right, *see, e.g.*, *Kitchen*, 110 Wn.2d at 411, but he cannot demonstrate that there was a manifest error.

In Medsker's opening brief, he appears to suggest that this alleged error is *automatically* reviewable because it implicates the constitutional right to unanimity. He is incorrect. An alleged error must do more than implicate a constitutional right to be reviewable for the first time on appeal; it must also be *manifest*, which means that it must have caused him actual prejudice. This, in turn, means that the error must have had practical and identifiable consequences at trial. *O'Hara*, 167 Wn.2d at 99. Consequently, this inquiry is *fact specific* to each case. *Id.* at 99-100.

Medsker also fails to explain or demonstrate that the failure to give a unanimity instruction had practical and identifiable consequences to his trial.[7] This is especially pertinent when the facts of the case show that Medsker's actions were part of a continuing course of conduct.[8] Unlike offenses considered in other unanimity instruction cases, the nature of Medsker's actions show that he attempted to elude police officers during a continuous pursuit that took place over a period of time and several locations while his underlying purpose—avoiding police contact—remained the same.[9]

Therefore, we conclude that Medsker failed to show that there was a manifest error affecting a constitutional right. The issue was not preserved, and we decline to review it for the first time on appeal. RAP 2.5(a).

---

[7] Medsker explains how the court's omission had practical and identifiable consequences to his trial in his reply brief, but that is too late to warrant review. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); RAP 10.3(a), (c).

[8] Medsker asserts the State conceded there were at least two distinct acts on the night of the incident. In its brief, the State commented, "*Even if* the first attempt to stop the vehicle could be construed as a separate act, the witnesses and the prosecutor made it clear that the act did not rise to the level of attempt to elude." Br. of Resp't at 20 (emphasis added). Clearly, this was not a concession, and the court would advise Medsker to more closely read the briefing before inaccurately representing the State's arguments.

[9] *See, e.g.*, *State v. Workman*, 66 Wash. 292, 293-94, 119 P. 751 (1911) (considering a defendant charged with statutory rape); *Petrich*, 101 Wn.2d at 568-72 (considering a defendant charged with one count of indecent liberties and one count of statutory rape); *Kitchen*, 110 Wn.2d at 406, 409-12 (considering one defendant charged with one count of statutory rape in the second degree and another defendant charged with three counts of indecent liberties); *State v. Coleman*, 159 Wn.2d 509, 510-14, 150 P.3d 1126 (2007) (considering a defendant charged with two counts of child molestation); *State v. Bobenhouse*, 166 Wn.2d 881, 886, 891-95, 214 P.3d 907 (2009) (considering a defendant charged with two counts of rape of a child in the first degree and two counts of incest in the first degree); *State v. Carson*, 184 Wn.2d 207, 212, 218-22, 357 P.3d 1064 (2015) (considering a defendant charged with one count of rape of child in the first degree and one count of child molestation in the first degree).

8

CONCLUSION

Accordingly, we affirm Medsker's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Maxa, J.

_____
Cruser, C.J.