[No. 2955-2.   Division Two.   January 22, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. EMERY DEAN MINER, *Appellant.*

*Quinby R. Bingham,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

JOHNSON, J.*—Defendant, Emery Dean Miner, was charged by information with the crime of murder in the second degree. The jury returned a verdict of guilty of manslaughter in the first degree.

He now appeals from that conviction, making three assignments of error: (1) that the trial court erred in permitting Officers Nolan and Garrison to testify as to statements made by the defendant after he had indicated he desired to consult with an attorney; (2) that the court erred in permitting the deputy prosecuting attorney to lay a foundation for impeachment on cross-examination of the defendant relating to his statements to the call operator, which were recorded; (3) that the court erred in permitting the call operator on rebuttal to testify from memory concerning said statements.

At 8:20 p.m. on March 10, 1977, Renee Bayer, the call receiver at the Tacoma Police communications center received a call from Dean Miner requesting an ambulance be sent to 5231 South Bell Street in Tacoma. She plugged

*Judge Bertil E. Johnson is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

in the fire department and the police dispatcher. Miner said, "I stabbed my brother. He was going to kill me." When she asked him for his telephone number he hung up; the conversation was recorded.

Officer Margeson was the first to arrive at the address given. The defendant was standing on the porch saying, "I stabbed him, I stabbed him. I told him I would do it. He came at me and I put it all the way in." At this point, Officer Margeson advised him of his *Miranda* rights. Defendant said he understood them and showed the officer the knife. He was taken to the police station and was again advised of his *Miranda* rights. He then advised the officers that he would not sign the *Miranda* form until he had talked to his attorney. Because he had a strong smell of alcohol on his breath, he was taken to the Breathalyzer room, where Officer Nolan began making out the custodial report as required by former RCW 36.63.050,[1] taking down his name, address, phone number, date of birth, and so forth. During this period, although Officer Nolan told him he was not interested in the stabbing, defendant made statements such as "I told him I'd stab him. He said you had better get a knife. You can't use a gun. So I got a knife and struck him."

The knife was 8 1/2 inches long. Defendant's brother was obese and the stab wound went from the front of his abdomen through the iliac artery to his spine, a distance of about 18 inches. Because of the force required for such a deep penetration, the coroner testified he did not think it possible that defendant's brother walked into the knife.

The defendant took the stand in his own defense and testified that his brother had backed into an end table and had fallen on the knife. He denied making the statements to Officer Nolan. The day after the arrest of the defendant, Officer Garrison measured the distance from the floor to a spot on the defendant's pelvic region which the defendant

---

[1]RCW 36.63.050 was repealed effective June 23, 1977.

had complained was injured by the knife's being shoved against his body.

Defendant asserts that admission of the testimony of Officers Nolan and Garrison was in violation of the rule laid down in *State v. Chapman,* 84 Wn.2d 373, 526 P.2d 64 (1974) and *State v. Haynes,* 16 Wn. App. 778, 559 P.2d 583 (1977), that *interrogation* should cease when the defendant states his desire to see an attorney.

In the case of *Miranda v. Arizona,* 384 U.S. 436, 478, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966) the Supreme Court of the United States said:

> Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

Implicit in the concept of coercion is the assumption that the statement is given in response to custodial interrogation. *State v. Ratow,* 4 Wn. App. 321, 481 P.2d 20 (1971). Statements which are freely given are voluntary and if they are likewise spontaneous, unsolicited, and not the product of custodial interrogation, they are not coerced within the concept of *Miranda. State v. Ratow, supra; State v. Roberts,* 14 Wn. App. 727, 544 P.2d 754 (1976); *State v. Toliver,* 6 Wn. App. 531, 494 P.2d 514 (1972).

In this case the statements of the defendant were not the product of custodial interrogation, but were voluntary, spontaneous, and unsolicited. The court did not err in admitting the testimony of the officers.

On cross-examination of the defendant, the prosecutor, in laying a foundation for impeachment, inquired as to the statements made by defendant to the call receiver to which

the defendant objected under the holding in *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977) and RCW 9.73.030–.090. The objection was overruled.

The facts in this case are considerably different from those in *Wanrow.* There the tape itself was placed in evidence by the State in its case in chief. Here the tape was not offered, but the testimony of the call receiver was elicited on rebuttal, after a foundation had been laid on cross-examination for impeachment. We consider that the present case is distinguishable from *Wanrow,* but need not elaborate further on the distinction in view of our disposition hereinafter set forth.

■ When called as a witness in his own defense, defendant denied he had stabbed his brother. The State was entitled to impeach that denial even though the testimony of the call receiver from her own recollection may have been otherwise inadmissible under *Wanrow.*

The United States Supreme Court in *Walder v. United States,* 347 U.S. 62, 98 L. Ed. 503, 507, 74 S. Ct. 354 (1954), stated at page 65:

> It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. . . .
> . . . [T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility.

(Footnote omitted.)

And as stated in *Harris v. New York,* 401 U.S. 222, 225, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643 (1971):

> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately,

and the prosecution here did no more than utilize the traditional truth–testing devices of the adversary process. (Citations omitted. Footnote omitted.) To the same effect *see State v. Johnson,* 53 Wn.2d 666, 335 P.2d 809 (1959); *State v. Crowder,* 119 Wash. 450, 205 P. 850 (1922).

Evidence inadmissible under *Miranda* against a criminal defendant in the prosecutor's case in chief is not barred where introduced for the purpose of impeaching defendant's trial testimony on the grounds of its inconsistency with prior statements made by him. *Oregon v. Hass,* 420 U.S. 714, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975).

We note parenthetically that the above cited cases addressed the admissibility of statements obtained in violation of a constitutional shield, while the present case involves a statutory shield.

█ Even if the telephone statements of the defendant were improperly used as impeachment on rebuttal, their use was harmless error. The court must be satisfied that the error was harmless beyond a reasonable doubt when viewed in the light of other overwhelming evidence to convict. *State v. Nist,* 77 Wn.2d 227, 461 P.2d 322 (1969); *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969); *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967).

A prejudicial error may be defined as one which affects or presumptively affects the final result of the trial. *State v. Craig,* 82 Wn.2d 777, 514 P.2d 151 (1973); *State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968). When the defendant's guilt is conclusively proven by competent evidence and no other rational conclusion can be reached except that the defendant is guilty as charged, then the conviction should not be set aside because of unsubstantial error. To determine whether prejudice has resulted, it is necessary that the appellate court examine the entire record. *State v. Britton,* 27 Wn.2d 336, 178 P.2d 341 (1947). There must be something more than a possibility of prejudice. *State v. Williams,* 132 Wash. 40, 231 P. 21 (1924).

The harmless error theory has been applied on a number of occasions to a variety of constitutional errors, as for example: confession of a codefendant, *Brown v. United States,* 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565 (1973); *Schneble v. Florida,* 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972); *Harrington v. California, supra;* defendant appearing in prison clothes, *Estelle v. Williams,* 425 U.S. 501, 48 L. Ed. 2d 126, 96 S. Ct. 1691 (1976); admission of an involuntary confession, *Milton v. Wainwright,* 407 U.S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174 (1972); lack of *Miranda* warnings, *State v. Nist, supra, State v. Johnson,* 71 Wn.2d 239, 427 P.2d 705 (1967); jury instructions, *State v. Martin, supra;* prior convictions without proof thereof, *State v. Beard,* 74 Wn.2d 335, 444 P.2d 651 (1968); playing tape before jury without presence of defendant and counsel, *State v. Smith,* 85 Wn.2d 840, 540 P.2d 424 (1975); witness conversing with jury out of presence of counsel and the court, *State v. Lemieux,* 75 Wn.2d 89, 448 P.2d 943 (1968). *See also State v. Craig, supra; State v. Haynes, supra; State v. Boggs,* 16 Wn. App. 682, 559 P.2d 11 (1977).

The statements made to the call receiver were merely cumulative of the statements made to Officers Margeson and Nolan. No prejudice results when the rebuttal evidence is merely cumulative. *Hardman v. Younkers,* 15 Wn.2d 483, 131 P.2d 177, 151 A.L.R. 868 (1942).

We have carefully reviewed the entire record in this case and are convinced that there was overwhelming and conclusive untainted evidence to support the defendant's conviction. If there was error in admitting the call receiver's testimony, which was merely cumulative, it was harmless and not prejudicial. We believe that its absence would not have affected the outcome.

The defendant had a fair trial and the judgment of the trial court is affirmed.

REED, A.C.J., and SOULE, J., concur.

Reconsideration denied February 23, 1979.

Review denied by Supreme Court June 1, 1979.