[No. 10940-5-I.   Division One.   May 23, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. MARIO ORTIZ, *Appellant.*

*Asmundson, Atwood & Emmons* and *L. Diane Emmons,* for appellant.

*David S. McEachran, Prosecuting Attorney,* for respondent.

CORBETT, J.—Defendant, Mario Ortiz, appeals his judgment and sentence for aggravated first degree murder. Finding prejudicial error in the admission of certain rebuttal evidence, we reverse and remand for a new trial.

A 77–year–old woman was raped, beaten and stabbed to death in her Whatcom County home. Part of the evidence linking the defendant to the crime was an inculpatory statement he made to police following his arrest on an unrelated charge. The defense was alibi. Several members of the defendant's family testified that he was at home sleeping during the commission of the crime. In addition, the defense presented a great deal of testimony concerning the defendant's mental capacity. This evidence was to the

effect that the defendant is mentally retarded, has an I.Q. of approximately 50, and is unable to read or write, hold a job, live independently, or function adequately under everyday circumstances.

Defendant first assigns error to the admission of the testimony of two rebuttal witnesses. The first witness, a bank branch manager, testified concerning an incident in which the defendant attempted to open a bank account. After establishing the account, Ortiz requested $150 even though he had not yet deposited any money. The witness testified that when she informed the defendant he could not withdraw money without first making a deposit, he told her:

> [I]f I didn't give him the $150 that I was going to force him to do something that he didn't want to do and he was going to have to hurt me and so he repeated that several times and at that point he took a knife and bounced it on the edge of my desk, the tip of the knife . . .

The second witness, a teenage neighbor of the defendant, testified concerning threatening sexual comments the defendant made about her and another young woman. She stated:

> We were throwing a football and then he came up and then he started talking and he mentioned something about rape and he said that he was going to rape this one girl . . . and then he told me that he was going to do the same thing to me . . . He said that he was going to shove me on the ground and then beat me up and then rape me.

Defendant contends that the testimony of these two witnesses was not proper rebuttal, and that its prejudicial effect greatly exceeded its probative value. The State counters that the testimony was properly admitted because it tended to show that the defendant had the ability to think and plan ahead, contrary to the impression left on the jury by the defense evidence.

■ Rebuttal evidence is admitted to enable the State to answer new matter presented by the defense. *State v. White*, 74 Wn.2d 386, 394, 444 P.2d 661 (1968). The

admission of rebuttal evidence is within the discretion of the trial court, subject to reversal only for manifest abuse of that discretion. *State v. White, supra* at 395. As with other types of evidence, rebuttal evidence is inadmissible if its prejudicial effect outweighs its probative value. *State v. Putzell*, 40 Wn.2d 174, 184, 242 P.2d 180 (1952); ER 403.

> A careful and methodical consideration of relevance, and an intelligent weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest.

*State v. Saltarelli*, 98 Wn.2d 358, 363, 655 P.2d 697 (1982).

Conceding, for the sake of argument, that the challenged evidence rebutted new evidence presented by the defense, we nevertheless conclude that its admission was error. The inflammatory nature of the evidence far outweighed any probative value it might have had. The cumulative effect of the rebuttal testimony was to portray the defendant as a knife–wielding potential rapist, not merely as a person with the ability to think and plan ahead. Because the defendant was charged with raping, beating and stabbing a woman to death, its prejudicial effect was undoubtedly great. The court recognized the inflammatory effect of the testimony and gave instruction 5[1] in an attempt to limit the jury's use of the evidence and cure the prejudice. Unfortunately, it served neither purpose and reemphasized the testimony.

At a CrR 3.5 hearing, the court ruled that Ortiz' retardation rendered him incapable of validly waiving his *Miranda*[2] rights. Accordingly, the court ruled that certain inculpatory statements made by the defendant following

---

[1]Instruction 5 reads as follows:

"Testimony that the defendant on earlier occasions referred to a rape which did not occur and that he displayed a knife which was not used is not direct evidence that he did either of such acts at the time here in question. Such testimony may be considered by you as it may relate to the defendant's mental capacity, the degree of his retardation and for such other issues as you see fit."

[2]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

his arrest were inadmissible in the State's case in chief, but could be used for impeachment purposes should he testify in his own behalf. Defendant assigns error to this ruling, contending that his inability to make a valid waiver of his *Miranda* rights rendered the statements inadmissible for any purpose. We disagree. Statements inadmissible under *Miranda v. Arizona, supra,* may be used to attack a defendant's credibility should he take the stand and testify inconsistently with such statements. *Harris v. New York,* 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971). The trial court did not err in ruling the statements could be used for impeachment purposes.

While being transported to the police station following his arrest on an unrelated charge, Ortiz told the officer, "I didn't want to screw the old woman, she wanted to screw me." Defendant assigns error to the court's ruling that the statement was admissible. He contends the statement should have been suppressed as the product of custodial interrogation conducted without the benefit of *Miranda* warnings and a valid waiver of their accompanying rights. The term "interrogation," as it is used in *Miranda,* refers to express questioning and to words and actions on the part of police reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis,* 446 U.S. 291, 301, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980). Here, the officer testified that he did not ask the defendant any questions or engage him in any conversation during the drive to the police station. This undisputed evidence indicates that the challenged statement was not the product of interrogation, but was unsolicited and freely made. The court did not err in ruling the statement was admissible. *State v. Miner,* 22 Wn. App. 480, 483, 591 P.2d 812 (1979).

After the defendant was taken into custody, a neighbor of the victim identified him from a photo montage as the man she had seen in her yard on the morning of the murder. Defendant assigns error to the admission of her testimony concerning the photographic identification, contending the montage was unnecessarily suggestive and

that use of a photo montage rather than a lineup denied him due process.

The purpose of placing some restriction on police identification procedures is to prevent misidentification of suspects by witnesses. *State v. Burrell,* 28 Wn. App. 606, 609, 625 P.2d 726 (1981). While lineups may be more reliable, the use of a photographic identification procedure does not violate due process unless, under the totality of the circumstances, the procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Hilliard,* 89 Wn.2d 430, 438, 573 P.2d 22 (1977) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968)). Of the 10 photographs in the montage, several reasonably resembled that of the defendant. The defendant's photograph was in no way highlighted or set off from the other 9. We conclude that neither the composition nor the use of the montage created a "substantial likelihood of irreparable misidentification." *State v. Hilliard, supra.* The trial court did not err in allowing the identification testimony.

Defendant also assigns error to instruction 7, which admonished the jury not to consider the fact that the defendant did not testify in reaching its verdict. He contends that the instruction was constitutionally defective because it failed to explain the defendant's privilege against self-incrimination and did nothing to dispel the possible adverse inferences the jury might draw from his failure to testify. The jury was also instructed that "the law does not impose upon a defendant the burden or duty of calling any witness or producing any evidence." Instruction 6 (in part). Taken together, the two instructions unambiguously informed the jury that the defendant need not offer any evidence and that his failure to testify could not be considered by them. These instructions adequately protected the defendant's constitutional right against self-incrimination. *State v. Parris,* 30 Wn. App. 268, 279, 633 P.2d 914 (1981), *modified on other grounds,* 98 Wn.2d 140, 654 P.2d 77

(1982). The trial court did not err in giving the challenged instruction.

At oral argument, counsel for Ortiz requested that this court not review the trial court's ruling finding Ortiz competent to stand trial. Accordingly, we have not done so.

Reversed and remanded for a new trial.

RINGOLD, J., concurs.

WILLIAMS, J. (dissenting)—The trial court correctly admitted into evidence the rebuttal testimony of the neighbor girl and the bank manager. Much of the defense presentation was devoted to portraying Ortiz as a man with unusually low mental capabilities who could not be expected to understand, contemplate, or plan rape and murder. Significantly, Ortiz did not present this evidence in order to argue that, although he committed the acts alleged, he did not have the sufficient mental ability to form the mens rea necessary to commit aggravated first degree murder. Instead, he denied any participation in the crime and, aided by the testimony of several family members, attempted to convince the jury that he was home in bed at the time the victim was raped, beaten, and stabbed to death. Thus, the only relevant purpose this defense presentation served was to attempt to corroborate the alibi defense by persuading the jury that Ortiz was not the type of person who would—or even could—commit the heinous crime alleged but, rather, was the sort of person who more likely would have been home in bed at the time of the offense.

The State was not only entitled but had the duty to rebut this defense evidence and any reasonable inferences which might be drawn from it. *State v. White,* 74 Wn.2d 386, 444 P.2d 661 (1968). The testimony of the neighbor girl was properly offered to prove that Ortiz did understand and could project a future act of rape. Likewise, the bank manager's testimony concerning Ortiz opening a bank account tended to prove that he had the mental ability to

plan ahead and remember what he had planned. The trial court carefully weighed the probative value of the rebuttal evidence against its possible *unfair* prejudicial effect and issued a straightforward cautionary instruction to the jury limiting its use. This was a proper exercise of the trial court's discretion. *State v. White, supra; State v. Castro,* 32 Wn. App. 559, 648 P.2d 485, *review denied,* 98 Wn.2d 1007 (1982).

I would affirm.

Reconsideration denied June 30, 1983.

Review denied by Supreme Court October 21, 1983.