[No. 12263-4-II.   Division Two.   January 16, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. WENDELL
LEONARDO DUKES, *Appellant.*

*John A. McNeish,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney, Chris Quinn–Brintnall, Senior Appellate Deputy,* and *John M. Neeb, Legal Intern,* for respondent.

PETRIE, J.*—Wendell Leonardo Dukes appeals a judgment and sentence imposed following his conviction by jury verdict of the crime of unlawful delivery of a controlled substance, RCW 69.50.401(a)(1)(i). On appeal, he assigns error to the trial court's denial of his motion to order a corporeal lineup in accordance with CrR 4.7(b)(2)(i). He contends, alternatively, the court's denial of his motion (1) violated his right to confrontation under article 1, section 21 of the Washington State Constitution; (2) violated his constitutional right to due process of law; and (3) constituted an abuse of discretion in violation of his rights under CrR 4.7(b)(2)(i). We find no error and affirm the judgment and sentence.

The information charging him with the crime was based on the sale of $20 worth of rock cocaine to an undercover policeman. Tacoma patrol officer Richard Warner testified that Dukes was the one who had sold him the drug. He testified that he had worked with special operations officers on May 4, 1988, making drug buys in the K Street area of downtown Tacoma. As he drove past the corner of South K and 13th in an unmarked police car, he saw Dukes waving at passing vehicles. He turned around and drove by that corner again. The second time, Dukes signaled him to turn the corner and pull over. When he did so, Dukes reached into his window and dropped three pieces of what he believed to be rock cocaine into his hand. He asked, "Twenty?", and Dukes replied, "Yeah." Warner gave him a $20 bill, the serial number of which had been recorded, and drove off. When he was half a block away, he radioed backup officers that the buy had been made. He described the seller as a black male, wearing a long black trench coat with a green fatigue jacket underneath, and a blue or dark-colored baseball cap with gold embroidery. Approximately 3 minutes later, he heard a radio transmission announcing the arrest.

*Judge Harold J. Petrie is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

Patrol Officer Michael Goetz and his partner made the arrest. Goetz testified that they had been three blocks away, and they had reached the area and spotted Dukes about a minute after Warner's transmission. He was dressed in clothing like that Warner had described (except that the fatigue jacket was camouflage colored), and he was holding the previously recorded $20 bill in his hand.

Dukes insisted that the officers had made a mistake. He pointed out that there had been several black males on the corner of South K and 13th at the time. Dukes said that one of them, "Mike," had asked him to change the $20, and he had done so. He was unable to convince the jury, however, and his conviction resulted in a 17–month sentence, within the standard range for his crime.

The trial court denied defendant's motion for a lineup, declaring:

> Lineups, of course are valuable tools when victims of crime are involved and persons have been subjected to a traumatic event which happens one time to them, in which case lineups are used to test their memory, their recollection, their ability to identify a perpetrator of an event or a crime. Lineups by police personnel seeking to identify are of very limited value because of the large number of people with whom they come in contact on a daily basis in connection with criminal activity and the large number of persons whom they have probably arrested between the time of a particular event and the time of the lineup. A person's ability, whether it is a police officer or a normal human being, as they are anyway, to then be able to segregate by identity a particular event when there have been many individuals and many events transpiring, in my opinion, renders a lineup in a case such as this not a practical tool with regard to probative evidence to be elicited in a trial.
>
> For that purpose, and realizing that the court has discretionary power to order a lineup when identification is at issue, I will deny the motion for a lineup in this particular case.

We consider first, defendant's rights under the confrontation clause of the state constitution. Implicitly, at least, defendant appears to accept the proposition that the Sixth Amendment right of confrontation guaranteed by the federal constitution was not violated. *See United States v. Owens,* 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838 (1988). Indeed, he invites us to apply "a more expansive

view" of the confrontation clause in our state constitution. We decline the invitation. We note, preliminarily, that no Washington court has held that there is a constitutional right to a lineup. Nevertheless, one court has left open the question of whether a constitutional due process right to a lineup exists. *State v. Boot,* 40 Wn. App. 215, 697 P.2d 1024 (1985).

Article 1, section 22 of the Washington State Constitution guarantees the right of a defendant to meet the witnesses against him face to face. However, the essential purpose of confrontation is cross examination. *Pettit v. Rhay,* 62 Wn.2d 525, 521, 383 P.2d 889 (1963). All the confrontation clause guarantees is an opportunity for effective cross examination. It is sufficient that the defendant has the opportunity to bring out such matters as the witness's bias, his lack of care and attentiveness, his poor eyesight, and even the very fact that he has a poor memory. *State v. Jenkins,* 53 Wn. App. 228, 235, 766 P.2d 499 (*Jenkins* considered both the United States and Washington Constitutions), *review denied,* 112 Wn.2d 1016 (1989). Dukes' counsel questioned Warner extensively and without restriction as to the possibility that he was mistaken about his identification of Dukes. That is all that was required to satisfy the confrontation clauses. There is nothing in either constitution which promises multiple opportunities to confront witnesses.

Neither does the denial of a lineup constitute a due process violation. A defendant is guaranteed no more than a fair identification process, that is, a process that is not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *State v. Ortiz,* 34 Wn. App. 694, 699, 664 P.2d 1267 (1983). There is no requirement that any particular identification procedure be used. *See State v. Hilliard,* 89 Wn.2d 430, 573 P.2d 22 (1977) (lineup not required instead of photo display); *State v. Hill,* 83 Wn.2d 558, 520 P.2d 618 (1974) (specific in–court identification not required); and *State v. Kinard,* 39 Wn. App. 871, 696 P.2d 603 (voice lineup not required), *review denied,* 103

Wn.2d 1041 (1985). In fact, there is no requirement for any formal identification process before trial. *State v. Kinard, supra.* The failure to provide lineup evidence goes to the sufficiency of the identification, not its propriety. *See State v. Hill,* 83 Wn.2d at 560; *State v. Kinard,* 39 Wn. App. at 874.

■ ■ Finally, we consider defendant's abuse of discretion contention. CrR 4.7(b)(2)(i) provides:

> (2) Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, the court on motion of the prosecuting attorney or the defendant, may require or allow the defendant to:
> (i) appear in a lineup;

The word, "may" is directory, not mandatory. It leaves this matter to the trial court's discretion. *See State v. Bartholomew,* 104 Wn.2d 844, 848, 710 P.2d 196 (1985). Discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. James,* 30 Wn. App. 520, 523, 635 P.2d 1102 (1981). Warner, as a police officer, would have dealt with so many suspects and arrestees in the intervening time that he would have little ability to connect a particular individual with a particular crime. Indeed, that is precisely why police officers invariably make written investigative and arrest reports shortly after each significant event.

In the case at bench, defendant's motion was made within a month of his arrest. Trial commenced within less than 2 months of his arrest. Defendant suggests that the trial court's reason for denying his motion—followed to its logical conclusion—would seem to prohibit a police officer from identifying a defendant at trial because the officer's ability to identify a criminal would always be suspect.

Dukes' contention has a superficial ring of reasonableness. In the case at bench, however, evidence presented at trial, subsequent to the buy, consistent with Warner's initial report, illustrates the wisdom of the trial court's holding. In his written report, Warner had described with considerable detail the seller's clothing. His description

matched very closely the clothes Dukes was wearing. Dukes, himself, said no one else on the corner was dressed that way. Additionally, he was holding the recorded $20 bill when he was arrested, 1 to 3 minutes after the sale. His explanation was implausible, if not impossible.

We hold the trial court's reason for denying Dukes' motion was not unreasonable. Accordingly, the ruling did not constitute an abuse of the court's discretion.

Judgment and sentence are affirmed.

ALEXANDER, C.J., and WORSWICK, J., concur.